## Crawford's Appeal.

1. A husband having money of his wife in his possession, purchased a house with his own funds and told her it was to be conveyed to her, she declined to have it.   Shortly after he said, "I have added $3000 to your money," but handed her no money.   He directed his clerk to credit her in his books with the $3000 as cash received from her: and it was so done.   He credited her regularly with the interest on that sum in connection with the other sums belonging to her till his death.   *Held*, that this was an executed gift followed by an express trust for the wife and payable to her from his estate.

2. The wife's claim for the $3000 could not be supported as a debt.

3. A contract by parol (which includes an unsealed writing) needs a consideration to support it.

4. When a gift is not executed by delivery, but the determining act remains *in fieri*, there is no force in the *intention* to do it.

5. The effect of such transaction between husband and wife is different from what it would be between strangers, where there are none to contest it but volunteers, who stand equally affected by the act of the husband under whom they claim.

6. A trust is essentially different from a contract, and will be enforced when a contract will not.

February 5th 1869.   Before THOMPSON, C. J., AGNEW, SHARSWOOD and WILLIAMS, JJ.   READ, J., at Nisi Prius.

Appeal from the Orphans' Court of *Philadelphia*, in the Estate of Henry M. Crawford, deceased: No. 67, to January Term 1869.

The question in this case arose upon the distribution of the personal estate of Henry M. Crawford, who died intestate without issue, leaving a widow Sarah Crawford and twenty-five nephews and nieces; there were no creditors, claimants on the fund.   The personal estate for distribution amounted to $128.750.   The distribution was referred to George M. Connaroe, Esq., as auditor.

The only disputed claim was that of Sarah Crawford, the widow, for $3000 principal and $702.39 interest, with which she was credited on the books of the decedent.   These books showed an account with Mrs. Crawford commencing December 6th 1846, when she was credited by "her share of the personal estate of Ephraim Hillman, deceased, $314.90," which was afterwards reduced by payments to her to $300, on this she was credited with interest from time to time, until in 1864 the balance in her favor was   $638.75 On January 12th of that year there was a credit in her account, "By Cash   .    .    .    .    .    .    .    100" and on May 9th, "By Cash .    .    .    .    .    .   3000"

making   .    .    .    .    .    .    .    .    3738.75

[Crawford's Appeal.]

This sum was carried into the next year's account as a balance to her credit, and she was credited with interest on the aggregate sum. The last entry on this account in the decedent's day-book, was:

"1866, Jan. 22d.   Interest account Dr. to Sarah Crawford,

For 1 y'rs interest on \$3.936.10 to Jan'y 1, 1866.   236.16."

The auditor reported:— * * That on May 9th 1864, Mrs. Sarah Crawford was credited (by the express direction of her husband, as testified by his bookkeeper) with the sum of three thousand dollars, as cash received from her. After that date interest, by his direction, was annually credited to her on his books, on the amount appearing to her credit which embraced the \$3000 now in dispute, and the moneys actually received in cash by Mr. Crawford from his wife, which have been already allowed by the auditor with interest.

"In the balance sheets made up for him annually by his book-keeper, Mrs. Crawford appeared as a creditor.

"On behalf of certain of the distributees, Mrs. Crawford herself was called and examined as a witness, and her testimony disclosed the following facts: That Mr. Crawford, a few years since, on purchasing a house on Olive street, told his wife that he would have the deeds for it made out in her name. Mrs. Crawford replied that she did not want the trouble of a house. There was nothing then said about the house after that, and one day Mr. Crawford came in and said to his wife, "I have added \$3000 to your little money, and after awhile I am going to give you \$3000 more." He did not hand her the money at the time, nor did she at any time afterwards receive any portion of the principal or interest of the money standing to her credit in the account he kept with her. The entry of the \$3000 on Mr. Crawford's books was never seen by his wife until after his death."

The auditor concludes his report:—

"If this acknowledgment had been under seal, the effect might have been quite different. In the language of Holley v. Adams, before cited, the fact that this intended gift 'existed in the nature of a claim against the estate determines the character of it' and the necessity of legal proof, and the auditor is compelled to treat it as a contract void for want of consideration.' The claim must therefore be disallowed."

Mrs. Crawford excepted to the report. The Orphans' Court dismissed the exceptions and confirmed the report. She appealed and assigned for error the confirmation of the report.

J. B. *Townsend* and *Strong*, for appellant.—In such cases regard must be had to the relation of the parties and the form of the transaction. An actual technical delivery is unnecessary: Flower's Case, Noy 67 ; Kreider v. Boyer, 10 Watts 59.   The

[*Crawford's Appeal.*]

claim is for the return of money which the husband acknowledged in writing his wife had delivered to him to hold for her use. No action would lie during coverture: Ritter *v.* Ritter, 7 Casey 396. After the husband's death his administrators were bound to pay her: Kutz's Appeal, 4 Wright 90. A wife by agreement with her husband may acquire separate property without a trustee: McKennan *v.* Phillips, 6 Whart, 571; Duffy *v.* Ins. Co., 8 W. & S. 413. A trust for the wife is sustainable although the property comes from the husband and is retained by him, if sufficiently identified: Herr's Appeal, 5 W. & S. 494; Reade *v.* Livingston, 3 Johns. Ch. 490; Searing *v.* Searing, 9 Paige 284; Pinney *v.* Fellows, 15 Verm. 536; Barron *v.* Barron, 24 Id. 375; Lucas *v.* Lucas, 1 Atk. 270; Northey *v.* Northey, 2 Id. 77; Hill on Trustees 420, note 1.

*J. B. Collahan,* for appellees.—It is essential to a valid gift by parol that there should be an actual or symbolical delivery. The title does not pass unless possession, or the means of obtaining it, are conferred by the donor, and accepted by the donee: Cooper *v.* Burr, 45 Barb. 9; Pennington *v.* Gittings, 2 Gill & Johns. 208, 216; 2 Kent's Com. 589–90; Wilson *v.* Carpenter, 17 Wisc. 512; Fenton *v.* Fenton, 48 Barb. 581; Hook *v.* Husted, 12 Johns. 189; Dole *v.* Lincoln, 31 Maine 422; Reed *v.* Spaulding, 42 N. H. 114; Irons *v.* Smallpiece, 2 Barn. & Ald. 552; Tate *v.* Hilbert, 2 Ves. Jr. 112; Campbell's Estate, 7 Barr 100; Plumstead's Appeal, 4 S. & R. 545. The circumstances here do not create a trust: McLean *v.* Langland, 5 Ves. 78; Cord on Married Women, § 593. The agreement was without consideration: Wallingford *v.* Allen, 10 Peters 583; Cardell *v.* Rider, 35 Verm. 47; Mews *v.* Mews, 15 Beav. 529.

The opinion of the court was delivered, February 28th 1869, by

AGNEW, J.—The title of the appellant to the $3000, credited to her on her husband's books, cannot be supported as a debt. A contract by parol, which includes an unsealed writing, needs a consideration to support it: Kennedy's Ex'rs. *v.* Ware, 1 Barr 450; Whitehill *v.* Wilson, 3 Penna. 413; Campbell's Estate, 7 Barr 100. Nor could it be supported as an ordinary gift between strangers, taking into connection with the books the explanatory proof of the facts. It would have no greater effect than an envelope enclosing securities for debt, endorsed "For Rebecca Gore," found among the papers of a decedent: Plumstead's Appeal, 4 S. & R. 545. Or a direction to burn certain notes in favor of a nephew, without delivering them: Campbell's Estate, 7 Barr 100. Or the endorsement of a single bill that it should be of no effect at the decease of the owner, unsustained by a consideration: Albert's Ex'r. *v.* Zeigler's Ex'r., 5 Casey 50; Raymond *v.* Middleton,

Id. 534.   Where the gift is not executed by delivery but the determining act remains *in fieri*, the law gives no force to the mere intention to do it.   But in this case are not the facts sufficient to show an executed intention followed by a trust?   The transaction was between husband and wife, and therefore influenced by their peculiar relation, with no one now to contest it but mere volunteers, who stand equally affected by the act as the husband himself under whom they claim to take.   The entry of May 9th 1864 was a credit in the *cash* book of the husband of $3000, *cash received.*   The receipt thus entered is an acknowledgment of cash paid, as much as a receipt in form to Mrs. Crawford would be.   It imports a past act, not a future promise.   This made out a primâ facie case, and so conscious of it were the opposite parties, that to escape its effect they called her as a witness.   She stated that her husband had purchased a house and told her he would have the deed made to her, but she replied that she did not want the trouble of a house.   Sometime afterward he came in and said to her—"I have added $3000 to your little money, and after awhile I am going to give you $3000 more."   He did not hand her the money then or at any time.   But we find the money credited as if actually received, carried into an account of moneys admitted to belong to her, mingled with it, interest credited upon it, finally consolidated in the account and interest added on the total sum. This is certainly ample evidence of an executed gift followed by an express trust in the form of an account for it and its accrued interest; remaining unrevoked or denied by the decedent up to the time of his death.   It cannot be doubted then, that Crawford intended to fasten upon himself and his estate an admitted gift and to become a trustee of the fund.   Who are they that say his admission and declared trust shall be avoided because there was no formal handing over and handing back of the money?   Mere volunteers—persons who are bound by his acts?   What greater right have they to impeach his solemn admission of the receipt, and the acknowledged trust exhibited by his book, than a voluntary assignee has to deny the act of his assignor?   In Rogers v. Fales, 5 Barr 158, it was held that a voluntary assignee does not represent creditors, and cannot question the conduct of his principal in permitting his wife to appropriate articles of ornament and furniture.   Then it is clear that the burden of proof is thrown on these volunteers to lift the trust from the estate, and how do they propose to prove this?   Not by disproof of the full intention to give, or of the intention to treat the gift as executed, or the intention to hold as trustee of the fund—not by disproof of the entries on the books, or of a counter charge or a withdrawal of the credit, or indeed of anything to prove an alteration of the mind of the husband, but merely to prove there was no formal passing of the money between them.

[Crawford's Appeal.]

But this was a useless ceremony between husband and wife where there is a clear executed intention to become the trustee of the fund for her benefit. In order to make such a formality effective, a witness must be called to see him hand the money to her and straightway receive it back. But of what greater efficacy would this be than the husband's own admission in his book and his *express* direction to his book-keeper ? The difference is clearly one of the merest form and not of substance. *Lex non præcipit inutilia ; quia inutilis labor stultus.* Of what possible use can it be to go through a mere ceremony where the evident intent is to assume immediate possession as a trustee ? I cannot see that the facts of this transaction have less force, when properly viewed, than those in Herr's Appeal, 5 W. & S. 494. There the subject of the gift was money unaccompanied with any declaration amounting to a trust. There money was kept in a lower or false bottom of a trunk to which the husband had access at all times, and to which he often went without the presence of his wife. The money continued just as much within his actual dominion as if it had been kept by him in another place. There was no evidence of actual delivery or passing over of the money, as the gift was inferred from the declarations of the husband that the money was his wife's, his keeping it in the lower division of the trunk, apart from his other money, his adding to it from time to time and taking none away, and his wife's carrying the keys. There was no formal delivery, no counting of the money, no specific sum stated by him ; indeed the sum was not known except as a probable or supposed amount, so that the case in fact rested directly on the declarations of the husband, and the setting aside that much money apart from his own ; while his actual access and control over it, and the legal unity of person, made the possession as much his own as his wife's. On this point see Larkin *v.* Mullin, 13 Wright 34.

Now in the case before us there was a most distinct setting apart to the wife of a specific sum, stated to his wife as actually done, or· "added," as he expressed it, declared expressly to his book-keeper, its receipt solemnly acknowledged by written entry in his book, mingled with her undoubted funds in the account, and increased by accumulated interest on the total sum ; the whole constituting an acknowledged gift and a superadded trust. Flowers's Case, Noy 67, is also authority for dispensing with a mere formality where the intent of the party is clearly executed. Thus a nephew returned to his uncle 100 pounds in a bag which he had borrowed, and laid it on the table before him. The uncle said— "I will not have it ; take it, you, and carry it home with you." This was held to be a good gift by parol, and consequently a good payment of the debt. It is evidently founded on the maxim stated in Noy, p. 91 : "The intent of the party shall be taken

[Crawford's Appeal.]

according to law." Without a payment of the debt the gift would be fruitless. Here the husband treated the money as passed between him and his wife, as the uncle did the bag of money, and as Herr did the money in the trunk, though in fact it had not formally passed; and he then declared a trust of it by entering it on his book to his wife's credit in an account of other moneys he had of hers. Thenceforth it became a trust, and must be so treated. It is this trust which these volunteers must disprove, and not the want of a mere formality dispensed with by the parties in its origin. Herein is the distinction overlooked by the learned auditor whose report the court confirmed. It is not the case of a promise, or a chose in action, but of an acknowledged receipt and a trust.

It is admitted that a bond or specialty given, which is but a chose in action, would be recoverable, a consideration being imported by the seal. And yet what is this but a difference in form, a merest shadow, a thing made by the flourish of a pen, where a consideration is often actually wanting? Why, in such a clear case as this, shall not the transaction follow the form of the instrument which denotes an act done, not a contract to do it? The intention to be bound for the receipt and care of the money is not less evident than if the instrument were a bond. That a trust differs essentially from a contract, and will be enforced when the latter cannot, is established by authority: Jones v. Lock, Law Rep. 1 Ch. Ap. 25; Ex parte Pye, 18 Ves. 140; Vance v. Vance, 1 Beav. 605.

We are of opinion, therefore, that the court below erred in confirming the report of the auditor rejecting the claim of Mrs. Crawford to the sum of $3000, and its interest credited on the book of the decedent. The decree of the Orphans' Court to this extent is reversed, and the record ordered to be remitted with instruction to allow to the appellant the said sum and interest, and to correct the distribution accordingly; and the costs are ordered to be paid out of the estate.