# Long's Appeal.    Murphy's Estate.

1. A paper which was intended to operate as a will, and which is wholly invalid as such, cannot be turned into a declaration of trust, so as to operate as a will and defeat the statute prescribing how the will of a married woman shall be executed.

2. Such a paper having been executed by a married woman, her husband added at the end thereof a promise to comply with the directions therein contained. *Held*, that this was not such a declaration of trust as could be enforced in equity.

[Long's Appeal.]

February 4th 1878. Before AGNEW, C. J., SHARSWOOD, MER-
CUR, GORDON, PAXSON, WOODWARD and TRUNKEY, JJ.

Appeal from the Orphans' Court of *Philadelphia county :* Of
July Term 1875, No. 13.

Appeal of John Long and others from the decree of the court
sustaining the exceptions to the report of the auditor in the matter
of the estate of John Murphy, deceased.

The following were the material facts disclosed before the audi-
tor : John Murphy, the decedent, was married to Martha Long on
February 25th 1830. At that time she possessed separate estate
amounting to the sum of eleven hundred and fifty dollars, which she
subsequently gave to her husband, who appropriated the entire
sum as he deemed proper. Decedent and his wife resided to-
gether for a period exceeding forty years, and by their joint indus-
try and economy accumulated considerable real and personal estate.
He died July 21st 1873, having survived his wife but three or four
weeks. On May 21st 1867, the decedent executed his last will
and testament, by which he bequeathed to his wife a legacy of one
thousand dollars, payable at the expiration of one year after his
decease. He subsequently, at the request and dictation of his
wife, wrote the following on a separate paper :

"Philada., June 22, 1871.
                    I, Mrs. Martha Murphy i am not
in good health i wish to make a devide of what I have past me to
my friends.

| My Brother, John Long, | $400. |
| Jane, my sister, | 100. |
| Margaret, my sister, | 350. |
| Margaret Jane Brady, | 100. |
| Martha Lodge, | 100. |
| Samuel Collins, | 100. |

I, John Murphy I will Ancer this Bill in one year after the de-
cease."

This paper was written at a time when Mrs. Murphy was dan-
gerously ill and was intended by her as her last will and testament.
Decedent subsequently, on September 29th 1871, executed a codicil
to his will wherein he bequeathed to his wife the sum of $1150, pay-
able one year after his decease, an annuity of twelve dollars per
month and certain real estate for life. During the period between
the death of his wife and his own, Murphy, in conversation with
different persons, frequently referred to the paper written by him
at her request. To one he stated, if his life was spared he would
settle that account, and whatever was "for" his wife he would
settle. To another, that if he lived three or four weeks he would
pay eleven hundred and fifty dollars to his wife's sister, Mrs. Col-
lins, and that this money was for his wife's friends ; that she was a

very worthy woman ; and had that amount of money herself. He specified the amount and said it was the same as that contained in his will, and she wanted that amount distributed. Decedent also inquired of the sister of his deceased wife in regard to this paper, and upon being shown it, said, " Yes, that is my handwriting; I did this according to her wishes, and if I live three or four weeks I will pay this off." He also said, " My will says a year, but I will not keep it that long ;" that she (the witness) should keep the paper, and show it to his executors, and they would pay the money. Testator further stated to this witness he had invested his wife's money in bonds. These bonds were in the possession of the executors of decedent after his death, but were not accounted for nor inventoried, and formed the subject of a surcharge against them by the auditor.

The auditor, inter alia, reported: " During his lifetime, both before and after his wife's death; decedent spoke repeatedly, and to different persons, of the paper, and of the amount of money mentioned therein, as his wife's money, and promised to pay it if his life was spared. He recognised the distribution of the money made by his wife, and expressed himself in a manner that leaves no room to doubt that he considered himself bound by it, and that he intended to carry out the wishes of his wife, as expressed in it. * * *

" It is clear that decedent, in making these acknowledgments and declarations in reference to his wife's money, spoke of her title to it as in no way depending upon the terms and provisions of his will, but as hers entirely, independent of the disposition he had made of it in his will and codicil. In the light of all the testimony, the bequest in the will for his wife seems to have been a further acknowledgment by him that that amount of money was hers.

" In the opinion of your auditor, the testimony produced before him establishes, conclusively, the fact that decedent treated the amount of money specified in the paper, as the property of his wife, and not his own, and that he acknowledged himself liable to her for it, as her trustee ; that, standing in that relation to each other in reference to this property, Mrs. Murphy was perfectly competent to direct her trustee to dispose of it in the manner set forth in the paper; that by virtue of that paper, the uses of the trust were changed, and that thenceforth he held the money as trustee for the parties named in the paper, and no longer for his wife. To this modification of the trust decedent assented in writing, and agreed to execute the trust in one year after his wife's death. His duties in that particular devolved upon his executors after his death."

He therefore reported that the claims of the persons named in the paper should be allowed, and that they were entitled to be paid out of the estate of the decedent. The executors of the decedent filed exceptions, which the court, Hanna, J., delivering the opinion, sustained, inter alia, saying :—

[Long's Appeal.]

"From the testimony taken before the auditor, and sent·up to us upon the application of the exceptants, it is clearly shown that if the testator received any money from his wife at the time of the marriage, he not only reduced it into possession, but used. and appropriated it for his own purposes, perhaps forty years before his death. It was never considered by either of them in the nature of a loan, or to be held by him in trust for her. This being the case, and the receipt of the money by the husband having been prior to the statute of April 11th 1848, without any cotemporaneous declaration or admission that he received and held the same in trust for her, is sufficient to work a change of ownership: Gochenaur's Estate, 11 Harris 460. No ante-nuptial agreement by parol was shown, whereby the parties agreed that the money should remain the property of the wife. This settlement, followed by the disposition and use of the money during marriage, consistent therewith, would have been binding .upon the death of decedent : Gackenbach v. Brouse, 4 W. & S. 546. Nor was any post-nuptial contract for a valuable consideration proven or attempted: Duffy v. Insurance Co., 8 W. & S. 432. A positive and clear declaration at the time of receiving the wife's chose in action (previous to 1848), may be sufficient to establish the husband as a trustee for the wife; but loose declarations of an intention to repay the money are not enough : Johnston v. Johnston's Admr., 7 Casey 450. Before the Act of 1848, the husband, by marriage, acquired a right to his wife's choses in action, if he reduced them to possession during coverture : Tritt's Admr. v. Colwell's Admr., 7 Casey 228.

"In the present case the testator mingled the money received from his wife with his own, and used it either in his business or otherwise, as he saw proper ; he never promised to repay his wife, nor did she demand it. We are unable to discover any setting apart by the testator of the money received from his wife ; his assets did not disclose any investment in her name or his, as her trustee, or even any securities corresponding in amount to the sum received from her.

"For the reasons given, we are of the opinion that the money received by testator from his wife became, not only from the intention of the parties, but by operation of law, absolutely his property.

"The auditor was inclined to this opinion, but he was misled by the testimony and apparent effect of the paper written by the testator, before referred to, coupled with his declarations and promises after the decease of his wife. In order to award payment of the claims of the persons named in the paper dated June 22d 1871, the auditor has construed it as a declaration by the testator that he held the sum of $1150 in trust for his wife; that she, the cestui que trust, had then directed him, her trustee, to dispose of the money mentioned therein in the manner indicated ; that he assented

[Long's Appeal.]

thereto, and thenceforth held the money as trustee for the parties named in the paper, and no longer for his wife, and that the testator agreed to execute the trust in one year after his wife's death. In this view we think the auditor was in error. That said paper was never prepared as a declaration of trust is apparent, and from the testimony in behalf of the claimants it appeared that the paper was written as, and for, the last will of Mrs. Murphy, who afterwards delivered it into the custody of a sister for safe-keeping. At the date of this paper the testator had already executed his will, whereby he bequeathed to his wife only a legacy of $1000, payable one year after his decease. This was not satisfactory to her, and no doubt the testator then agreed to increase her legacy to $1150, the amount she had given him on her marriage, and in case of her death before him, to pay and distribute the same among her relatives and friends named in the paper he had written at her dictation.

" Testator partly performed his promise by executing a codicil to his will on the 29th day of September following, whereby he increased the legacy to his wife to $1150, but he failed after her decease to provide for the distribution of said legacy among her relatives and friends.

" The words 'I, John Murphy, I will ancer this bill in one year after the decease,' do not constitute any obligation for the non-performance of which the testator or his estate would be liable. It was a promise without consideration, and the persons named in the paper are but volunteers. If this paper constituted a declaration of trust, and had the wife survived her husband, she would probably have been entitled to both her legacy and the like amount as cestui que trust. This certainly was not intended by the testator. The auditor to a great extent relied upon the promises of testator after the death of his wife, but these were merely declaratory of an intention never performed, and an agreement and undertaking without consideration. It is almost unnecessary to cite authorities to sustain the views entertained by us in disposing of the questions submitted. In Hill on Trustees, pages 91 and 126, the fundamental principle is laid down that in order to fasten a trust on property of any description, by means of parol declarations, the expressions used must amount to a clear and explicit declaration of trust. Loose and indefinite expressions, and such as indicate only an incomplete and executory intention, are insufficient for this purpose.

"The declaration of trust must be complete and unequivocal: Hill on Trustees 134.

"Again, it has long been an established principle with courts of equity that they will not interfere to perfect the title of a party claiming merely as a volunteer. To determine who are or who are not regarded as volunteers, it is settled that a valuable considera-

tion is requisite to put the court in motion : See note to page 129, Hill on Trustees. However, it has been held that a blood consideration was sufficient to support an executory trust in equity, at least where the instrument was under seal : See above. But in this state, in Campbell's Estate, 7 Barr 100, it was held that natural love and affection was not a sufficient consideration for an equitable assignment. And the evidence to establish a parol trust must be clear and positive : Emerick v. Emerick, 3 Phila. Rep. 94; Capehart v. Capehart, 2 Id. 134. See also Raybold v. Raybold, 8 Harris 308.

" The facts shown in Gray's Estate, 1 Barr 328, disclose admissions and promises similar to those of the testator in the present case. There the decedent, Gray, four or five years before his death, admitted, on different occasions, that he had some five hundred dollars of his wife's money, and that it was his intention to pay it back again; that it should not be said that he had any of his wife's money. On another occasion, when told by an acquaintance that he thought that the money obtained from Ireland should go to Mrs. Gray and her children, the decedent said 'they should have it,' and he did not intend to claim it as his own. And again, when another acquaintance ' put it at him ' that he had the money of Mrs. Gray, he admitted it, and said she and her children should have it. Mrs. Gray claimed this five hundred dollars from her husband's estate, and the auditor awarded her the amount, with interest. This was excepted to by the heirs of decedent, but the Orphans' Court confirmed the report of the auditor. This decision, upon appeal, was reversed by the Supreme Court.

" For the reasons stated, we think the auditor was in error in awarding payment of the claims presented before him, and therefore sustain the exceptions. The report is recommitted to the auditor for correction, in accordance with this opinion."

All the claimants appealed, and assigned this action of the court for error. This case was first argued on the 30th of January 1877, and was affirmed, his honor, Judge WILLIAMS, being absent, by a divided court. It was subsequently ordered to be re-argued.

*Aaron Thompson*, for appellants.—The testator in his lifetime was a voluntary trustee for his wife, and after her death remained such for the beneficiaries designated by her in the declaration of trust which was ratified by him, both before and after her decease.

He had an undoubted right of election, before the Act of 1848, to reduce her personal property into possession, but as he did not do this, he had the same right to treat it continuously as hers, and to regard any trust disposal thereof she might see fit to direct or make. That this money was hers, and so considered by him, is evidenced by his declarations to several persons, including some of

[Long's Appeal.]

these appellants, two or three years before her death, that he had invested it for her in government bonds, and that she, or her appointees under the trust should sacredly reap the benefit of it. Surely these emphatic declarations in her lifetime, with other outspoken confirmatory remarks immediately after her death, should leave no doubt of his interpretation of the method of disposition to be made of these trust funds by his executors after his death : Dellinger's Appeal, 21 P. F. Smith 425 ; Moyer's Appeal, 27 Id. 482 ; Ann Ziegler's Appeal, 3 Norris 342.   A disclaimer of conversion of the wife's money to his own use may be established by the husband's subsequent admissions, proved by the positive testimony of witnesses : Gray's Estate, 1 Barr 329 ; Gochenaur's Estate, 11 Harris 460.

*Lewis D. Vail*, for appellees.—Decedent made no declaration at the time of receiving his wife's money, or afterwards, clearly evincive of his intent at the moment of reduction into possession that he held it as his wife's money, or for her use or under her direction, and hence this case is clearly distinguishable from Moyer's Appeal.   The paper was not intended as a declaration of trust, and cannot be so construed : Warriner *v.* Rogers, Law Rep. 16 Eq. 353 ; Heartley *v.* Nicholson, Id. 19 Eq. 242.

Mr. Justice PAXSON delivered the opinion of the court, March 25th 1878.

The auditor found as a fact that John Murphy, the decedent, did not convert to his own use the sum of $1150, received by him as a part of his wife's estate ; that he held it as trustee for his wife, invested it in government bonds, as his wife's money, two or three years prior to his death, and repeatedly recognised his obligation to pay it.   The court below reversed this finding of the auditor. Upon a careful examination of the evidence, we are by no means sure that he was so clearly wrong that his finding of the facts should have been reversed.   It must be conceded that the decedent had the right to convert the money.   It was evidently the proceeds of property derived by Mrs. Murphy from her parents, at the time of her marriage with the decedent in 1830.   At that time there was no statute protecting the separate estates of married women, and his right of conversion was clear.   But there was evidence, not overwhelming, it is true, but sufficient to go to a jury in a common-law proceeding and to sustain a verdict, that the decedent did not convert, and never intended to convert, the money to his own use.   The finding of the auditor upon an issue of fact being like the verdict of a jury, ought not to be set aside because it might have been the other way.   Unless it ought to have been the other way, and was clearly wrong, it should not be disturbed.   But if we were to reverse the decree upon this point it would not help the

appellants. Assuming that there had been no conversion, and that the decedent held the $1150 in trust for his wife; that it was her money, to dispose of as she saw proper, have the appellants any valid claim upon it? The answer to this question depends upon what Mrs. Murphy did to confer such right. It is very plain that any promise made by the decedent not based upon a valid disposition of the money by his wife, would be without consideration and void. The facts are that in the year 1871, his wife being ill at the time, the decedent, at her express direction, wrote down on a piece of paper the following words :—

"Philada., June 22, 1871.

"I, Mrs. Martha Murphy i am not in good health i wish to make a devide of what I have past me to my friends.

| My Brother, John Long, | $400. |
| Jane, my sister, | 100. |
| Margaret, my sister, | 350. |
| Margaret Jane Brady, | 100. |
| Martha Lodge, | 100. |
| Samuel Collins, | 100. |

I, John Murphy I will Ancer this Bill in one year after the decease."

This is all there is in the case to show a disposition of her money by Mrs. Murphy. What is the effect of this paper? Was it intended as a present irrevocable gift to the parties named therein, or was it intended as a testamentary paper merely? There was nothing to indicate that it was a present gift. She had no idea of parting with the money during her life. The contrary intent appears upon the face of the paper. She speaks of not being in good health and wishing "to make a devide of what I have past me to my friends." Then her husband adds to the paper, "I, John Murphy I will Ancer this Bill in one year after the decease." Whose decease? Evidently the decease of Mrs. Murphy. Mrs. Collins testifies that Mrs. Murphy "asked Mr. Murphy to write down how she wished her property to be distributed, and he wrote then this paper at her dictation." The paper was evidently intended as a will. It was a rude attempt on the part of Mrs. Murphy to dispose of her property after her death. It is needless to say that the paper possessed none of the statutory requirements of such an instrument. The right of a married woman to make a will of her separate estate rests upon statute, and its provisions must be strictly complied with. It was contended, however, that although the paper is invalid as a will, it nevertheless creates a trust in favor of the appellants; that the decedent, as her trustee, was bound to execute it, and has in fact promised to do so. Undoubtedly, if Mrs. Murphy had created a valid trust of this money,

[Long's Appeal.]

assuming it to be her separate estate, her husband, in his lifetime, and his personal representatives since his death, could have been compelled to execute it. But this paper creates no trust that equity would enforce. Had it been in the nature of a present gift to the appellants, the case might have been different. But a paper which is evidently of a testamentary character, which was intended to operate as a will, and which is wholly invalid, cannot be turned into a declaration of trust, so as to operate as a will, and defeat the statute prescribing how the will of a married woman shall be executed. If, then, the paper is inoperative, either as a present gift or testamentary disposition of Mrs. Murphy's money, it does not need an argument to show that the declaration of the decedent that he would "Ancer the Bill," or pay the money to the appellants, amounts to nothing. In the absence of any legal liability or duty to pay, his promise to do so was a mere *nudum pactum*.

The decree is affirmed and the appeal dismissed at the cost of the appellants.

SHARSWOOD, MERCUR and WOODWARD, JJ., dissent.