## ESTATE OF THOMAS SMITH, DECEASED.

APPEAL BY THE PENNSYLVANIA CO. FOR INSURANCES, ETC., TRUSTEE, FROM THE ORPHANS' COURT OF PHILADELPHIA COUNTY.

Argued January 27, 1891—Decided October 26, 1891.
[To be reported.]

1. The owner of personal property, in order to make a voluntary disposition of it, may by a proper transfer of the title make a gift of it direct to the donee, or he may impress upon it a trust for the donee's benefit; but whether a gift or a trust is intended, if the transaction still remains imperfect and executory, equity will not aid in its enforcement.
2. An executory trust, properly so called, is one in which the limitations

Statement of Facts.

are imperfectly declared, and the donor's intention is expressed in such general terms that something not fully declared is required to be done, in order to complete and perfect the trust and to give it effect. When the limitations are fully and perfectly declared, the trust is regarded as executed.

3. Although the cases may not be altogether consistent, it is now well settled that what is clearly intended as a gift, but is imperfect as such, cannot be given effect by construing it as a declaration of trust. There is no principle of equity which will perfect an imperfect gift, and a court of equity will not impute a trust where a trust was not in contemplation.

4. If a trust is intended, it will be equally effectual whether the donor transfer the title to a third person as trustee, or declare that he himself holds the property for the purposes of the trust. No certain form of declaration is required to create a trust, but the intention must be plainly manifest, and not derived from loose and equivocal expressions made at different times.

(*a*) The decedent, having purchased certain bonds payable to bearer, placed them in an envelope on which he indorsed the statement that they were "held for Tom Smith Kelly," signing it with his initials. He made an entry of the purchase in his account-book, adding, over his signature, that they were bought for, were the property of, and belonged to his nephew and godson, Thomas Smith Kelly,

(*b*) He also entered in a pocket memorandum-book an itemized statement of his investments, writing opposite the entry of these bonds the word "Tom." This memorandum he showed to another nephew. Semi-annually, he collected the interest on the bonds and placed it to the credit of the donee. Thomas Smith Kelly resided with the decedent, who admittedly stood toward him in loco parentis:

5. The written declarations of the decedent, which were carefully preserved until his death, in connection with his acts subsequent to them, incontrovertibly established his intention to hold the bonds as trustee for the nephew, and were sufficient to vest in the latter the beneficial ownership of them as against the decedent's residuary legatees.

6. The question, in such a case, is not so much whether in the lifetime of the donor the declaration was actually exhibited by him to other persons, as whether, from all the circumstances of the case, it would appear to have been written and preserved for the inspection of others. Whether the donor might have revoked the declaration of trust in his lifetime, not decided.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS, MCCOL-LUM and MITCHELL, JJ.

No 205 July Term 1890, Sup. Ct.; court below, No. 236 October Term 1883, O. C.

On May 15, 1890, the second account of the Pennsylvania

Statement of Facts.

Company for Insurances on Lives and Granting Annuities, executor of the will of Thomas Smith, deceased, was called for audit in the court below, before ASHMAN, J. The subject of the account was a fund composed of $13,000 in coupon bonds of the Pensacola & Atlantic Railroad Company, and interest collected thereon. The fund was claimed by Henry S. Parmalee, guardian of Thomas Smith Kelly.

The facts found in the adjudication of the auditing judge, and in the opinion of the court in banc, were in substance as follows:

The testator, Thomas Smith, died May 20, 1883. Then living with him, as a member of his family, was a nephew, Thomas Smith Kelly, about thirteen years of age, who had resided with and been maintained by him during the preceding ten years. The nephew continued to reside with the surviving members of the testator's family, after his death, until 1887.

In January, 1882, the testator purchased the coupon bonds, embraced in this account. About that time he informed the father of the minor that he had laid by or appropriated some bonds for the boy. After his death, his box in the trust company's vault was opened, and an envelope was found therein indorsed as follows:

"13 bonds, $1,000 each, held for Tom Smith Kelly.

"T. S.

"Pensacola & Atlantic Railroad Mortage bonds."

The envelope contained the bonds in question. In the account-book of the decedent, in his own handwriting, appeared an account relating to the bonds, copied at length in the opinion of the court, infra. The M. E. Smith mentioned in the latter part of the entries, was the testator's wife. He also kept a pocket memorandum book, in which he jotted down his monetary transactions as they took place, and in January of each year made a summary of his investments. In the latest statement of this character in the book, dated shortly before his death, the sum total was $1,000,000, and included in the items making up that total was "$13,000 Pensacola & Atlantic Bonds." Under the head of income for 1883, in the same book, was noted $390 interest on these securities. Opposite to the entry of the bonds was the word "Tom," in testator's handwriting. The entry had a red line drawn through it,

which line was afterwards scratched out by the testator, and the entry was written in again by him. It was explained that the half brother of the minor had drawn the line through at the testator's request, because the testator had intended to enter the item elsewhere.

The will of the testator bequeathed his residuary estate to his executor, to be held upon certain trusts. At the audit, all technical objections to the capacity of the accountant to object to the claim, were waived by the claimant.

The auditing judge, citing and considering Milroy v. Lord, 4 DeG. F. & J. 274; Bond v. Bunting, 78 Pa. 213; Ex parte Pye, 18 Ves. 146; Morgan v. Malleson, L. R. 10 Eq. 475; Richardson v. Richardson, L. R. 3 Eq. 686; Dickerson's App., 115 Pa. 198, adjudged that a valid declaration of trust had been established in favor of the claimant, and awarded the bonds and accrued income thereon to the guardian of Thomas Smith Kelly.

Exceptions to the adjudication, after argument thereof, were dismissed, and the adjudication confirmed, in an opinion by HANNA, P. J., citing and discussing Bond v. Bunting, 78 Pa. 210; Heartley v. Nicholson, L. R. 19 Eq. 233; Helfenstein's Est., 77 Pa. 328; Crawford's App., 61 Pa. 55; Roberts's App., 85 Pa. 84; Dickerson's App., 115 Pa. 198.* Thereupon, the Pennsylvania Company, etc., as trustee under the will of Thomas Smith, took this appeal, specifying inter alia that the court erred:

1. In awarding the $13,000 of bonds to Thomas Smith Kelly.

2. In not awarding said bonds to the appellant as trustee.

*Mr. John G. Johnson* (with him *Mr. Frank P. Prichard*), for the appellant:

Such a trust as the one set up in this case can be created only by a declaration of trust, and the vital question is, did the decedent make such a declaration?

1. The very name, declaration of trust, involves the idea that the testator must declare his assumption of the trust; in other words, must say something, or write something, or exhibit something to some person, or to the world at large. If he stands

---

* See Smith's Est., 26 W. N. 364.

alone in a room and repeats his intention to himself, that is not
a declaration.   Nor is the writing of a memorandum, not in-
tended to be shown to any one during his life.   A writing may
be a testamentary disposition, if he looks forward to its discov-
ery and inspection after his death; but it cannot be a declara-
tion of trust, if he does not intend to communicate it in his
lifetime.   As in gifts there must be a delivery, so in declara-
tions of trust there must be something equivalent to a delivery,
to wit, a declaration made in the donor's lifetime to some one
beside himself.   No case can be found in which a trust has
been held to have been declared, unless there has been such a
communication, substantially identifying the cestui que trust
and the trust property.

2. It is clear that the indorsement on the envelope, and the
entries in testator's books, do not amount to a declaration.   In
point of fact they show an intention to make a gift, constitut-
ing the bonds " the property of " his nephew; and all the cases
agree that an intention to make a gift excludes the idea of a
declaration of trust.   However, there is not the slightest evi-
dence that the decedent ever showed these memoranda to any
one, or ever intended that they should be seen until after his
death.   The only declaration made to any one, was the con-
versation with the father of the alleged cestui que trust.   It
was more consistent with the idea of an undelivered gift, than
with that of a trust; but, at all events, it wholly failed to iden-
tify the subject of the trust, and there is nothing to connect it
with the secret memoranda above mentioned.   If there was not
a trust which the cestui que trust could have enforced in the
donor's lifetime, he is out of court.

3. To avoid this difficulty, the court below calls the trust a
revocable one, but overlooks the distinction between a revo-
cable act creating the trust, and a power of revocation annexed
to a completed trust.   If a declaration is of such a character
that the donor may change his mind before he communicates
it to any one, as in the case of a secret memorandum, it is not a
declaration, but only an intention to declare.   If it is com-
plete, it cannot be revoked so as to prevent the trust from
taking effect.   The citation of a few authorities will show how
strict has been the enforcement of the rule that there must be
some act on the part of the donor, divesting him of the legal

or equitable dominion over the property, and vesting in the donee an immediate right, legal or equitable: Bispham's Eq., § 66; Richards v. Delbridge, L. R. 18 Eq. 11, following Warriner v. Rogers, L. R. 16 Eq. 340, and overruling Richardson v. Richardson, L. R. 3 Eq. 686, and Morgan v. Malleson, L. R. 10 Eq. 475; Trough's Est., 75 Pa. 115; Young v. Young, 80 N. Y. 422 (36 Am. Rep. 634); Flanders v. Blandy, 45 Ohio St. 108.

*Mr. E. Hun Hanson* (with him *Mr. Alfred J. Wilkinson*), for the appellee:

From a consideration of the decisions in Milroy v. Lord, 4 DeG. F. & J. 264; Warriner v. Rogers, L. R. 16 Eq. 340; Richards v. Delbridge, L. R. 18 Eq. 11; Heartley v. Nicholson, L. R. 19 Eq. 233; Sheuston v. Brock, L. R. 36 Ch. 541; Bond v. Bunting, 78 Pa. 210; Helfenstein's Est., 77 Pa. 328; Dickerson's App., 115 Pa. 198, it is clear: (*a*) That a donor or settler may by acts which admit of a clear, distinct purpose, manifest that he is not the beneficial owner of personal property, but that another, a mere volunteer, is; (*b*) that if he so act as to part with the beneficial interest in favor of another, he may retain the legal custody of the property without impairing the validity of the execution of his purpose; and (*c*) that the volunteer, after the death of the donor, may obtain a decree in equity formally establishing his beneficial ownership, if the donor neither changed nor revoked his purpose. It is clear from the evidence that Mr. Smith declared that he had no beneficial interest in these bonds and that he held them for the benefit of his nephew, not only by his indorsement on the envelope and his entries in his ledger, but by the entry in his pocket book which was shown to Charles Kelly. This court may well be relieved from considering what his power would have been if he had changed his purpose toward his nephew, inasmuch as he did not do so: Sheuston v. Brock, L. R. 36 Ch. 541.

OPINION, MR. JUSTICE CLARK:

The appellant is the Pennsylvania Company for Insurances on Lives and Granting Annuities, trustee under the will of Thomas Smith, deceased; the appellee, Henry S. Parmalee,

guardian of Thomas Smith Kelly, a minor. The proceeding was the adjudication of an account, filed by the trustee under the will of Thomas Smith, of the principal and income of thirteen thousand dollars of Pensacola & Atlantic Railroad Company's coupon bonds, which the said trustees claimed were part of the estate of decedent and passed to them under his will. The guardian of Thomas Smith Kelly, a minor, appeared before the auditing judge, and claimed that the bonds had been held by the testator in trust for said minor, and should be awarded to the latter's guardian. The auditing judge and the judges of the Orphans' Court sustained the guardian's claim, and awarded him the fund.

The owner of personal property, in order to make a voluntary disposition of it, may, by a proper transfer of the title, make a gift of it direct to the donee, or he may impress upon it a trust for the benefit of the donee. It is well settled, however, that whether a gift or a trust is intended, if the transaction still remains imperfect and executory, equity will not aid in its enforcement. The expression of a mere intention to create a trust, therefore, without more, is insufficient; like a promise to give, it will not be enforced in equity: Dipple v. Corles, 11 Hare 183; Helfenstein's Est., 77 Pa. 328. Almost all trusts are in a certain sense executory. Ordinarily, a trust cannot be executed except by conveyance; there is, in most cases, something to be done. But this is not the sense in which a trust is said to be executory. An executory trust, properly so called, is one in which the limitations are imperfectly declared, and the donor's intention is expressed in such general terms that something not fully declared is required to be done, in order to complete and perfect the trust, and to give it effect. When the limitations of a trust are fully and perfectly declared, the trust is regarded as an executed trust: Egerton v. Brownlow, 4 H. L. 210; Cushing v. Blake, 30 N. J. Eq. 689; Pomeroy's Eq. Jur., § 1001.

Nor, in such case, if it appear that the intention of the donor was to adopt either one of these methods of disposition, will a court resort to the other for the purpose of carrying it into effect. What is clearly intended as a voluntary assignment or a gift, but is imperfect as such, cannot be treated as a declaration of trust. If this were not so, an expression of present gift

would in all cases amount to a declaration of trust, and any imperfect gift might be made effectual simply by converting it into a trust.   There is no principle of equity which will perfect an imperfect gift, and a court of equity will not impute a trust where a trust was not in contemplation: Milroy v. Lord, 4 DeGex, F. & J. 264–274; Flanders v. Blandy, 45 Ohio St. 108. Upon the same ground, it has been held that a paper of a testamentary character, but invalid for want of proper execution, cannot be enlarged or converted into a declaration of trust: Warriner v. Rogers, L. R. 16 Eq. 340.   In Richards v. Delbridge, L. R. 18 Eq. 11–13, it was held, overruling Morgan v. Malleson, L. R. 10 Eq. 475, and Richardson v. Richardson, L. R. 3 Eq. 686, that to create a trust there must be the expression of an intention, not to create a present gift, but to become a trustee.   See, also, Milroy v. Lord, supra; Brett's Lead. Cas., 58; Long's App., 86 Pa. 196.   Although the cases may not be altogether consistent, the rule is now, we think, well settled in accordance with the doctrine declared in Richards v. Delbridge, supra, that, if the transaction is intended to be effected by gift, the court will not give it effect by construing it as a trust.   It is well settled that nothing can take effect as an assignment or gift which does not manifest an intention to relinquish the right of dominion on one hand and to create it on the other.   If the donor has perfected his gift as he intended, and has placed the subject beyond his power or dominion, the want of consideration is immaterial; the donee's right will be enforced.   A gift can only be effectual after the intention to make it has been accompanied by delivery of possession or some equivalent act; if it is not, the transaction is not a gift, but a contract merely.

If a trust is intended, it will be equally effectual whether the donor transfer the title to the trustee, or declare that he himself holds the property for the purposes of the trust.   "It is well settled that the owner of personal property may impress upon it a valid present trust, either by a declaration that he holds the property in trust, or by a transfer of the legal title to a third party upon certain specified trusts.   In other words, he may constitute either himself or another person trustee.   If he makes himself trustee, no transfer of the subject-matter of the trust is necessary; but if he selects a third party, the sub-

ject of the trust must be transferred to him in such mode as will be effectual to pass the legal title:" Bispham's Eq., 78; Perry on Trusts, §§ 96–98; Hill on Trustees, 117 et seq.; Dickerson's App., 115 Pa. 210. In Richards v. Delbridge, L. R. 18 Eq. 11–13, Sir George JESSEL said: "A man may transfer his property without valuable consideration in one of two ways: He may either do such acts as amount in law to a conveyance or assignment of the property, and thus completely divest himself of the legal ownership, in which case the person who by those acts acquires the property, takes it beneficially or on trust, as the case may be; or, the legal owner of the property may, by one or other of the modes recognized as amounting to a valid declaration of trust, constitute himself a trustee, and, without an actual transfer of the title, may so deal with the property as to deprive himself of its beneficial ownership, and declare that he will hold it from that time forward in trust for the other person." Heartley v. Nicholson, L. R. 19 Eq. 233, is to the same effect. If the donor makes a third party a trustee, he must transfer to him the subject of the trust in such mode as will be effectual to pass the title. The transaction, as in the case of a gift, to be effectual must be accompanied by delivery of the subject of the trust, or by some act so strongly indicative of the donor's intention as to be tantamount to such a delivery; but, where the donor makes himself the trustee, no transfer of the subject-matter is necessary. Ex parte Pye, 18 Ves. 140; Donaldson v. Donaldson, Kay, 711; and Crawford's App., 61 Pa. 52, are illustrations of trusts in this form. In such cases, no assignment of the legal title is required, for the nature and effect of the transaction is that the legal title remains in the donor for the benefit of the donee. It is conceded that, as the bonds of the Pensacola & Atlantic Railroad Company, the bonds in question, were not delivered to Thomas Smith Kelly by Thomas Smith, the transaction cannot be sustained as a gift. It is clear that a gift was not in contemplation, and the only question for our determination is, whether or not a complete and valid trust was created, for a trust would seem to have been contemplated.

There is no certain form required in the creation of a trust. In the case of personal property or choses in action, trusts may be proved by parol. If the declaration be in writing, it is

not essential, as a general rule, that it should be in any particular form. It may be couched in any language which is sufficiently expressive of the intention to create a trust. " Three things, it has been said, must concur to raise a trust; sufficient words to create it, a definite subject, and a certain or ascertained object; and to these requisites may be added another, viz., that the terms of the trust should be sufficiently declared: " Bispham's Eq., 65, citing Cruwys v. Colman, 9 Ves. 323 ; Knight v. Boughton, 11 Cl. & F. 513. The intention must be a complete one, and this requisite is especially applicable to trusts created by voluntary dispositions. " A mere inchoate and executory design is not enough, and unless there is some distinct equity, as fraud, for example, it cannot be enforced: " Bispham's Eq., 65. The intention must be plainly manifest, and not derived from loose and equivocal expressions of parties, made at different times and upon different occasions ; but any words which indicate with sufficient certainty a purpose to create a trust will be effective in so doing. It is not necessary that the terms " trust " and " trustee " should be used. The donor need not say in so many words, " I declare myself a trustee," but he must do something which is equivalent to it, and use expressions which have that meaning ; for, however anxious the court may be to carry out a man's intention, it is not at liberty to construe words otherwise than according to their proper meaning: Richards v. Delbridge, supra. In Heartley v. Nicholson, supra, Vice-Chancellor BACON says : " It is not necessary that the declaration of a trust should be in terms explicit, but what I take the law to require is that the donor should have evinced by his acts which admit of no other interpretation, that he himself had ceased to be, and that some other person had become the beneficial owner of the subject of the gift or transfer, and that such legal right of it, if any, as he retained, was held in trust for the donee." " The one thing necessary," says the same learned judge in Warriner v. Rogers, supra, " to give validity to a declaration of trust, the indispensable thing, I take to be that the donor or grantor, or whatever he may be called, should have absolutely parted with that interest which had been his up to the time of the declaration ; should have effectually changed his right in that respect, and put the property out of his power, at least in the

Opinion of the Court.

way of interest." The acts or words relied upon must be une-
quivocal, plainly implying that the person holds the property
as trustee : Martin v. Funk, 75 N. Y. 134. Therefore, in Young
v. Young, 80 N. Y. 422, where the donor signed a paper certi-
fying simply that certain bonds belonged to his sons, but did
not declare in any words of plain import that he held them in
trust for them, the declaration was held to be insufficient. In
Helfenstein's Est., 77 Pa. 328, Mr. Justice SHARSWOOD says :
" There is no prescribed form for the declaration of a trust.
Whatever evinces the intention of the party that the property,
of which he is the legal owner, shall beneficially be another's,
is sufficient."

In the case at bar, the subject of the alleged trust is certain ;
the cestui que trust is particularly designated by name and
identified, whilst the terms are specific, and sufficiently shown.
The contention is, however, that a trust upon these terms was
not sufficiently declared ; that the whole matter rested in the
undeclared and unexcuted intention of the donor, and was,
therefore, wholly without effect.

Thomas Smith, although a married man, had no children.
He was the owner of a large estate, the personalty alone aggre-
gating about $1,000,000. Thomas Smith Kelly was his nephew,
his godson and namesake ; and, although his father and mother
were both living, he lived with and was maintained and edu-
cated by his uncle from the age of three years until the time
of the decedent's death on the twentieth of May, 1883, when
he was about thirteen years of age. His uncle admittedly stood
in loco parentis, which would seem to furnish a sufficient
motive for making this disposition of the bonds, and would
have like effect generally to that which attends the relation of
parent and child : Ex parte Pye, 18 Ves. 146. The bonds
were purchased the twenty-eighth of January, 1882, and the
death of the decedent occurred on the twentieth of May, 1883.
A year or more before his decease, which was presumably near
the time when the bonds were purchased, Thomas Smith, in a
conversation with John H. Kelly, the father of Thomas Smith
Kelly, stated " he had laid by or appropriated some bonds for
Tom." After his death, when his box in the trust company's
vaults was opened, the bonds in question were found amongst
his assets. The envelope in which they were contained was

indorsed: "13 bonds, $1,000 each, held for Tom Smith Kelly. [Signed] T. S.   Pensacola & Atlantic R. R. mortgage bonds." The envelope contained bonds of that description and amount. In the decedent's account-book was an entry in his own handwriting, as follows:

Account Thomas Smith Kelly.

Pensacola and Atlantic Railroad Company. Mortgage Bonds.

Dr.

1882.

Jan. 28.   To cash paid E. W. Clark & Kimball for $16,000 bonds at 95, and interest from August 1st, 1881 . . . . . $15,189.33

Less Nos. 1223, 1224, 1225, $3,000, sold William Simpson, Jr., same day at same price, $3,000 . . . . . . . $2,850.00

Balance $13,000, cost . . . . . $12,339.33

$13,000 of these bonds I bought for, and are the property of, my nephew and godson, Thomas Smith Kelly, and belong to him.

THOMAS SMITH.

Philadelphia, January 28th, 1882.

Cr.

1881.

August 1.   Due and payable August 1st, 1921, coupons due August 1st and February 1st, six per cent per annum on New York.   Principal and interest guaranteed by the Louisville Railroad Company.   Bonds, $16,000, $1,000 each, Nos. 1223–1238, both inclusive.

1882.

Aug. 10.   Thomas Smith Kelly, interest collected for him . . . . . $390.00

1883.

Feb. 1.   Cash coupons paid M. E. Smith for Tom S. K. . . . . . . $390.00

It also appears that the decedent kept a pocket memorandum-book, in which he jotted down his monetary transactions as they took place, and in January of each year made a summary of his investments.   In the latest statement of this character in the book, dated shortly before his death, the sum total was

$1,000,000, and, included in the items making up that total, was, "$13,000 Pensacola & Atlantic bonds." Under the head of income for 1883, in the same book, was noted $390 interest on these securities. Opposite to the entry of the bonds was the word "Tom," in testator's handwriting. The entry had a red line drawn through it, which line was afterwards scratched out by the testator, and the entry was written in again by him. It was explained that a nephew had drawn the line through at testator's request, because the testator had intended to enter the item elsewhere.

Was not all this, taken together, a sufficient and clear declaration of trust in favor of the nephew? The decedent, as we have seen, in his lifetime, in his own handwriting, and over his own initials and signature declared that these bonds, thus set apart and "appropriated or laid by" for his nephew, not only were the "property of his nephew," and "belonged to him," but they were "bought for" and "held for him." In the absence of the precise terms "in trust," it is difficult to suggest words more expressive of a trust than the words thus employed. Their meaning is so obvious and certain that there can be no doubt of the decedent's intention.

But it is said that this intention was not properly declared; that the words were written upon the envelope and in the private account-book of the decedent, and it is not shown that these entries and indorsements were witnessed by or were ever exhibited to any one; that they were mere private memoranda which were wholly within the power of the donor, and which in his lifetime he might have revoked, canceled, or destroyed. The argument of appellant's counsel is that a "declaration" of trust involves the idea that the donor must declare his assumption of the trust; in other words, that he must say something, or write something, or exhibit something, to some other person, or to the world at large. "If he stands alone," say the learned counsel, "in a room, and repeats his intention to himself, that is not a declaration. If he writes a memorandum, not intended to be shown to any one during his lifetime, that is not a declaration. It may be a testamentary disposition, if he looks forward to its discovery and inspection after death; but it cannot be a declaration of trust, if he does not intend to communicate it in his lifetime. As in gifts there must be a

delivery, so in declarations of trust there must be something equivalent to a delivery, to wit, a declaration made to some other person or to the world at large, which constitues the donor at once a trustee and conveys to the cestui que trust an immediate equitable interest."

It is admitted that the declaration need not be made to the cestui que trust; that, if made to other persons, under circumstances indicating the intention of the donor to make a declaration, it is sufficient. It is conceded, also, that but little publicity is required, and that the donor may retain the paper in his possession; but it is contended that the declaration must of necessity be made to some one besides himself.

It may be conceded that if a man, being alone, merely repeat his purpose to himself, that would not be a declaration, for it is obvious that, as his utterance was not intended for other ears than his own, it was merely the expression of an intention. It may also be conceded that if, under such circumstances, he were to have written his purpose formally upon paper, and added his signature and seal, he might the next moment have destroyed it. The trust, in such case, would take effect whenever it appeared that the instrument was executed as the deliberate expression of his purpose, and this may be shown by his acts or declarations respecting it, or by circumstances tending to establish the fact.

The purpose of Thomas Smith, with reference to these bonds, was not only written and authenticated by his initials or signature, but the writing was carefully preserved until the time of decedent's death. The envelope containing the bonds in question had an informal declaration indorsed thereon that the bonds were held for Tom Smith Kelly; the account-book showed, not only that they were bought for his nephew, but that they belonged to him,—they were his property. For whose inspection were those written declarations intended? Certainly not for the inspection of the donor, but for those who might have occasion at any time in the future to investigate his affairs. The donor was advanced in years, and was subject to the ordinary ills, accidents, and misfortunes of life, both physically and mentally. He was liable, although living, to be incapacitated for all business affairs, or he might be removed by death. In any event, his purpose would seem to have been

to leave a memorandum for the eyes of others, exhibiting his intention and purpose with respect to these bonds. It is unnecessary for us to consider whether or not the donor might have revoked the declaration. He did not revoke it; he put it away with the bonds themselves, and carefully preserved it. He collected the interest semi-annually, and, in recognition of the existing trust, placed the several amounts to the credit of the donee. It is not essential to the validity of a trust of personal property that it should be irrevocable; indeed, a right of revocation may be expressly reserved: Dickerson's App., 115 Pa. 198; Lines v. Lines, 142 Pa. 149. The question in such case is not so much whether in the lifetime of the decedent the declaration was actually exhibited to the inspection of others, as whether, under all the circumstances of the case, it would appear to have been written and preserved for the inspection of others. If the declaration had been a formal one, under the hand and seal of the declarant, upon proof of its execution we think its effectuality would not have been questioned, even though it never had been exhibited to the cestui que trust or to any other person; and we cannot see that the informal nature of the writing could alter its effect, if the donor's intention is otherwise clearly established.

There was no provision for the assignment of the bonds of the Pensacola & Atlantic Railroad Company on the books of the company. They were simply ordinary coupon bonds, transferable by delivery. A formal assignment was unnecessary to transfer the title. The rights of creditors do not intervene. The appellants stand in the shoes of the testator, and their rights do not rise superior to his. Whilst a gift, in its proper legal acceptation, was not contemplated by Thomas Smith, it is plain that his purpose was to vest the equitable ownership of these bonds in his nephew, and to apply the interest for his benefit. In the language of the president judge of the Orphans' Court, his " declarations and subsequent acts, evidenced by his admissions and solemn entries in his books, and the indorsement upon the envelope containing the bonds, furnish incontrovertible proofs of his intention to hold them as a trustee."

In Crawford's App., 61 Pa. 52, Crawford, who was indebted to his wife about six hundred dollars said to her, " I have added three thousand dollars to your little money;" and it

Opinion of the Court.

appears that on the ninth of May, 1864, the book-keeper by his direction made an entry of three thousand dollars additional to her credit on the books. The book-keeper was directed to enter the credit simply "for cash received." It does not appear that any declaration of trust was communicated to him by Crawford, or, in fact, that a trust was expressly declared to any other person. Mrs. Crawford at no time afterwards received any portion of the principal or interest of the money standing to her credit, but interest was from year to year credited upon it. After the husband's death, on the distribution of his estate the widow claimed this three thousand dollars with the accrued interest. It was held by this court that her claim could not be supported as a gift, but it was sustained upon the footing of a trust. We are of opinion upon similar grounds that the railroad bonds were, in this instance, intended, not as a present gift, for the testator retained the possession of them, and exhibited no intention whatever of parting with them; on the contrary, he expressly declared in writing that he "held" them for Thomas Smith Kelly, for whom he had bought and paid for them, and that the bonds were his property. Completeness of the trust is to be judged of, not only by what the testator said and what was written, but by what the testator did. He did not read the declaration to others, but he put it away with the bonds in his box in the trust company's vaults, and carefully preserved it; and he received and properly applied the interest, circumstances which give rise to the reasonable implication that the writing was intended for the eyes of others, and not merely for his own.

We are of opinion that the trust is fully established and

> The decree of the Orphans' Court is affirmed, and the appeal dismissed at the costs of the appellant.