## Pleibel's Estate

Before Gest, Henderson, Van Dusen, Stearne and Sinkler, JJ.

The facts appear from the adjudication and supplemental adjudication of

HENDERSON, J., auditing judge.—The testatrix died July 20, 1929, leaving a will dated March 4, 1925, duly admitted to probate, whereby she directed the payment of her debts and funeral expenses; she declared that one half of her two-thirds interest in a certain lot of ground at Atlantic City devised to her by her aunt, Caroline Schill, was the property of her brother, Albert L. Pleibel; she gave her household furniture and effects to Elberson Little and Anna Sebald, and gave the residue of her estate to John Eckstein Beatty and Mary S. Beatty and appointed them executors. . . .

Letters testamentary issued to the executors named in the will on July 25, 1929. . . . Thereafter, John Eckstein Beatty, one of the executors as well as one of the residuary legatees, died in October 1931, and Mary H. S. Beatty is executrix of his estate.

Albert L. Pleibel, a brother of the decedent, claimed a one-half interest in the mortgage standing in the decedent's name and secured upon property situated at Texas Avenue and the Boardwalk, Atlantic City, which is valued in the account at $168,333.33.

The account also contains four items as payments on account of the principal of said mortgage and interest on said payments, one half of which is claimed by Albert L. Pleibel.

The claimant also contends that one half of the interest payments on said mortgage appearing in the account belongs to him.

He also claims a half interest in items of principal and interest received by John Eckstein Beatty from the owner of the property, for which Beatty has never accounted to the decedent.

The latter claim, in my opinion, is one which will have to be made at the audit of the executor's account in the estate of John Eckstein Beatty, who has died since the death of Caroline Pleibel.

Albert L. Pleibel also claims the full ownership of $9,000 Electric and Peoples trust certificates appearing in the account at a value of 48, or the total sum of $4,320, and various items of interest thereon, all of which appear in the account.

Caroline Pleibel, so far as the record shows, inherited by devise from her aunt Caroline Schill, who died September 2, 1899, a two-thirds interest in the property situated at Texas Avenue and the Broadwalk, Atlantic City. This interest in the property passed to this testatrix under the residuary clause of the Schill will.

The remaining one-third interest went in trust for the benefit of the heirs of William Pleibel, a nephew of Caroline Schill, who was also a brother of Caroline Pleibel and of the claimant here, and at William Pleibel's death the principal of this one-third interest went to his children.

The entire property was sold in 1925 to one Fleming for the sum of $325,000. When the sale was consummated on May 26, 1925, a mortgage was given to Caroline Pleibel in the sum of $175,000, payable in annual instalments of $1,667 each year for the first 9 years, the entire mortgage debt to be due in 10 years, together with interest payable at the rate of 6 percent. At the same time, there was placed on the property another mortgage given to the children of the deceased brother, amounting approximately to one half of the mortgage given to Caroline Pleibel.

In the will under which this audit takes place, the decedent said:

"I do hereby declare that one half of my two-thirds interest in a certain lot of ground at Atlantic City devised to me by my aunt Caroline Schill is the sole and undivided property of my brother A. L. Pleibel."

This will was executed March 4, 1925, about 3 months before the final sale of the property.

Previous statements had been made in writing by Caroline L. Pleibel, indicating the interest of her brother in this property.

On January 24, 1923, she executed a will which was revoked by the will finally probated, in which she made the same declaration in the same words, and on February 27, 1925, shortly before the execution of the instant will, she drew up in her own handwriting a paper making the same declaration in identical language, purporting to be a draft of a will but which she actually never executed.

Elizabeth Blackhurst testified that she knew Caroline Schill and had talks with her before her death concerning the property which she owned on Texas Avenue and the Broadwalk at Atlantic City. This witness said that Mrs. Schill said that the land at Texas Avenue was Albert's and "the other between Carrie and Bill, the niece and nephew." Albert, William, and Caroline Pleibel were the nephews and niece of Caroline Scholl and her only heirs.

She testified that this testatrix had made a paper for the benefit of Abert L. Pleibel, but that she, the witness, had never seen it.

The testimony of William T. Pleibel as to statements made to him by this testatrix was to the same effect. He said that when he came back from the war he went to see his aunt, this testatrix, and she told him that he had been left a

one third in the Schill property and that two thirds of it had been left to Caroline Pleibel, of which one half belonged to her brother Albert.

The reason assigned for this arrangement was that Caroline Schill did not like Albert Pleibel's wife and did not wish her to know about the transaction.

When the property was sold, this witness again had a conversation with his aunt and asked what she was going to do with regard to his Uncle Albert's share. She replied that she would have a mortgage covering the two-thirds interest in the property created, and that Mr. Beatty had a trust agreement which would protect Albert's rights.

The claimant made a call upon the executor of Beatty, now deceased, to produce this writing and he was unable to do so.

It should be noted that, as Beatty was residuary legatee under the instant will, such a document would be against his interest.

When the deed to the property passed, a settlement sheet showed that the testatrix received $10,000 paid on account and $6,719.49 balance due. These two sums totaled $16,719.49. One half of this amount would be $8,359.74, which was paid by Caroline Pleibel to the claimant and may properly be called his part of the settlement. These facts follow irresistably from the recitals which I have made and from facts which I am about to recite.

On June 3, 1925, Albert Pleibel deposited in his own account in National Bank of Commerce, later consolidated into Bankers Trust Company, the sum of $8,780.24. The settlement had been made on May 26, 1925.

There was no direct proof of the sources of this money. It was a fund, however, slightly larger than his share of the settlement.

Charles A. Young, a public accountant, testified that he made out Caroline Pleibel's income tax return for the year 1925 and that he took up with her the question of stating in her returns the profits on the sale of this property. He testified that she told him that her brother owned a one-half interest which she had in the mortgage and one half of the two-thirds interest which she had taken out of the profits. Accordingly he made up her return on this basis, and under her instructions made up a return for Albert L. Pleibel. The worksheet of the latter's return in the handwriting of this witness was offered in evidence. This exhibit, under schedule C, "Profit from the sale of real estate, stock, bonds, etc.," contains the following: "Premises Atlantic City, N. J., date acquired about 1900, amount received $293,879.02. Divided one-third interest. Sold under instalments payable in 10 years, of which $8,359.74 was received in 1925, of which 5/13 was received as profit."

At later dates the decedent repeated orally and in writing her declarations that Albert L. Pleibel, her brother, was the owner of a one-half undivided interest in this mortgage.

On October 7, 1925, the testatrix consulted Charles C. Babcock, of Atlantic City, in reference to the drafting of a will.

In connection therewith she sent him certain instructions. The first of these, in the handwriting of the decedent, is as follows:

"I do hereby declare that one half of my two-thirds interest in a certain mortgage on a lot of ground at Atlantic City devised to me by my aunt, Caroline Schill, is the sole and undivided property of my brother, Albert L. Pleibel. I think it wise to start the will with this paragraph."

In another exhibit, also in the testatrix's handwriting, occurs the following:

"Do not omit to mention item first, that one half of the mortgage of $150,000 bequeathed to me by my aunt is the sole and undivided property of my brother Albert L. Pleibel."

After the death of Beatty, there was found on his desk a draft of an unfinished will of the decedent, which stated:

"I hereby declare that one half of the mortgage I hold on Atlantic City lot, Texas and the Boardwalk, is the sole and undivided property of my brother."

It was also established that Albert Pleibel made deposits at various times of amounts which corresponded to his one-half share of the interest payments and his one-half share of the payments on the principal.

The annual principal payments were $1,666.67 and the claimant should have received $833.33. The payments made on this mortgage up to November 20, 1929, may be found in exhibits introduced under the testimony of William Bater.

A letter of Beatty shows that on May 26, 1926, there was due on account of principal $1,667, which was paid.

The testatrix's income tax return for 1926 sets forth under schedule C, "Profits from the sale of real estate, stocks, bonds, &c.," referring to "Premises in Atlantic City" a "divided one-third interest sold under instalment mortgage payable 10 years from 1925, $833.33 was received in 1926 of which 5/13 was profit."

On January 25, 1927, Albert L. Pleibel deposited with National Bank of Commerce $858.33, and, according to Beatty's letter, the $1,666.67 due on account of principal May 26, 1927, was also paid. The testatrix's tax return for the year 1927 shows the same entry of $833.33 as above.

The claimant, on September 15, 1927, deposited with First Penny Savings Bank the sum of $833.33.

The instalment due May 26, 1928, $1,666.67, was also paid. The testatrix again made a return for the year 1928, setting forth that she had received $833.33—"payment on account of purchase money mortgage $833.33." On February 1, 1929, a check for $3,408.33 was drawn to Albert L. Pleibel's order by Beatty, which contained two items, one of $2,575 interest, and the other of $833, the amount due on principal.

No further payments were made to the claimant; the payments on the mortgage however were collected by Beatty as before and, it is claimed, unaccounted for.

It is suggested that the $25 over and above the $833.33 appearing in the deposit of January 25, 1927, was an amount added by Beatty to compensate for delay in payment, all the interest checks having been drawn to his order.

It should be noted that all the testatrix's income tax returns for 1926, 1927, and 1928 were in Beatty's handwriting and witnessed by him. The return made in 1929, which was after the testatrix's death, was made by Beatty on behalf of the estate and it sets forth under schedule C, "Premises Atlantic City, N. J., sold under instalments mortgage payable in 10 years received $833.33".

The claimant's income tax return for 1929 makes the same statement in schedule C, as already quoted from the testatrix's return.

I will next take up the interest payments, but before doing so remark that there is no way of identifying the deposits to the claimant's credit, but that they bear such a close resemblance to the amounts which were due him under the testatrix's own plan that I believe I can properly, in the absence of evidence to the contrary, identify these deposits with the source of the payments.

Some discrepancy as to dates may be due to the fact that the owner of the property did not pay promptly, and the same may be said of the remittances from Beatty to the claimant.

Now, as to the mortgage interest. There was due November 26, 1925, $5,250, and the claimant's share of this would be $2,625, the amount he deposited on January 29, 1926.

There was due May 26, 1926, $5,250, and the claimant's share of this would be $2,625, the amount he deposited on September 22, 1926.

There was due November 26, 1926, $5,200, and the claimant's share of this would be $2,600, the amount he deposited on August 24, 1927.

There was due on May 26, 1927, $5,200, and the claimant's share of this would be $2,600; the amount he deposited on December 20, 1927, was $2,625.

There was due November 26, 1927, $5,150, and the claimant's share of this would be $2,575, the amount he deposited on June 22, 1928.

There was due May 26, 1928, $5,150, and the claimant's share of this would be $2,575, the amount he deposited on February 1, 1929.

The last payment to the claimant is in the check for $3,408.33 above referred to, made up of mortgage interest, $2,575, and payment on account of principal, $833.33.

Of the foregoing payments to the claimant, the following were made by Beatty's checks to the order of the claimant:

| | |
|---|---:|
| Jan. 26, 1926, Third National Bank | $2,625.00 |
| Aug. 24, 1927, National Security Bank | 2,600.00 |
| Sept. 15, 1927, National Security Bank | 833.00 |
| Dec. 17, 1927, National Security Bank | 2,625.00 |
| Feb. 1, 1929, National Security Bank | 3,408.33 |

Counsel for the estate endeavored to show that these payments made to the claimant by check represented payments on certain notes given by Beatty to Pleibel and specified by counsel for the accountant.

In reply to this contention, the claimant offered in evidence the following letter from F. C. Fuges, Esq., Mr. Embery's law partner, addressed to Mr. Farr, counsel for the claimant. The letter in full is as follows:

Chester N. Farr, Jr., Esq.,        "March 28, 1930.
1018 Real Estate Trust Bldg.,
Philadelphia, Penna.

Dear Mr. Farr:

Mr. Beatty has to date not sufficiently recovered to spend any time at the office, but he has refreshed me with some information, which I thought I would send on to you.

In reference to the payments to Mr. Albert L. Pleibel as directed to Miss Pleibel, in addition to those set forth in your prior letter, I list the following:

January 28, 1926 ................................. $2,625.00
 (This check was endorsed by Albert L. Pleibel and
 deposited in the First Penny Savings Bank of Phila-
 delphia, on Jan. 30, 1926 by A. L. Pleibel.)

August 24, 1927 ................................. $2,600.00
 (this check was endorsed by Albert L. Pleibel and
 deposited August 24, 1927, in the West End Trust
 Company and paid Aug. 25, 1927 by Al. L. Pleibel.)

Sept. 15, 1927 ................................. $833.33
 (this check was endorsed by Albert L. Pleibel and
 deposited in the First Penny Savings Bank of Phila-
 delphia, Sep. 15, 1927 by A. L. Pleibel.)

Dec. 17, 1927 ................................. $2,625.00
 (this check was endorsed by Albert L. Pleibel and
 deposited in the First Penny Savings Bank of Phila-
 delphia, Dec. 20, 1927 by A. L. Pleibel.)

"In reference to your claim for a one-half interest in the mortgage, as I told you before, Elverson Little is claiming to be the common-law husband of the

decedent and as such entitled to one half of her estate. This claim is likely to result in litigation, because the attorney representing Mr. Little is still demanding a settlement and threatening legal proceedings. Of course, until this claim is disposed of Mr. Beatty would not be in position to make any declaration in respect to the mortgage.

"In reference to the amounts which Mr. Beatty claims have been paid on account of his and other notes to Pleibel, he has not been physically able to give the matter sufficient attention to give you the documentary evidence. He assures me, however, that he has the evidence of these payments and at the first opportunity will furnish you with the evidence, and, of course, he only claims credit for those payments which he can so prove.

"As soon as Mr. Beatty is physically fit, I will get in touch with you and go over the matter with you. Yours very truly,
FCF/E                                                                                    F. C. Fuges."

This letter was spread out in full in Mr. Farr's brief but had not been offered. He asserted he was taken by surprise in a sudden change of front by the estate, and I held an adjourned audit to permit him to offer it in evidence. Mr. Embery objected, but I overruled the objection because it was not a mere admission by the accountant, but, as Mr. Embery's firm also represented the Beattys as residuary legatees, it was an admission by them.

From the foregoing letter, it will be seen that these payments were regarded as payments made at the direction of the testatrix and have no reference to Beatty's notes held by Pleibel. The notes are referred to in the latter part of the letter, and no connection of the payments with them is suggested.

The letter also shows that the payment of December 17, 1927, deposited on December 20th, was entirely for interest, thus clearing up the discrepancy of $25 in the amount. The interest should have been one half of $5,200 or $2,600 and instead the check was for $2,625, the additional sum of $25 also being interest for delayed payment.

The testatrix's own income tax return, as above pointed out, shows that she never took the whole of the interest for herself. For the year 1926, she returns interest of $5,405. If she had charged herself with the full amount of interest received from this mortgage, she should have charged herself with at least $10,500. In successive years she would have returned, for $1927, $10,400, for 1928, $10,300, and for 1929, $10,200, as all these amounts were paid. She actually returned as follows: 1927, $2,500; 1928, $5,300; 1929, $5,230. This last return was made by Beatty himself as her executor, and all the other returns as above are in his handwriting.

After the testatrix's death, on August 24, 1929, Beatty, her executor and residuary legatee, prepared and signed the following paper:

"August 24, 1929.
"In consideration of A. L. Pleibel extending the time of payment of all notes of John Eckstein Beatty for a period of 3 years, and no action on this shall be brought before 3 years, the statute of limitations is hereby waived.

"John Eckstein Beatty agrees to have conveyed to A. L. Pleibel property 758 North Twenty-sixth Street, subject to the existing encumbrance of $1,200. One half of two thirds of mortgage on Atlantic City property is the property of A. L. Pleibel. This agreement also includes the note of Charles S. Warner and John Spark and in case of my death they are to be paid at once.

"J. E. B. John Eckstein Beatty. (Seal) Agreed to Albert L. Pleibel. (Seal)

The above is an exact duplicate of the agreement signed the above date.
JOHN ECKSTEIN BEATTY."

Here we have a clear and unequivocal statement made against interest by John Eckstein Beatty, to the effect that one half of this Atlantic City mortgage is the property of the claimant.

Beatty made a further statement on the subject. On October 18, 1929, he wrote that he had written to Mr. Fuges, with whose law firm Beatty had offices, to prepare an assignment of one half of the mortgage and after its execution by the executors to deliver to Albert L. Pleibel.

It should be remembered that Beatty for some years had been attorney for the testatrix. On January 27 and 28, 1925, when the question of the sale of the Texas Avenue property, then standing solely in the name of the testatrix, was discussed, Beatty wrote to the claimant giving him the terms of the purchase and saying: "I hope this is satisfactory to you. . . ."

There are a number of witnesses who have testified to declarations made by the testatrix to the effect that her brother Albert Pleibel had an interest in the property and in the mortgage after it had been executed. . . .

And in addition to these we have the testimony above referred to of Elizabeth Blackhurst.

In opposition to this claim, counsel for the estate offered in evidence the will of Carolina Schill, in which the devise of the two-thirds interest to Caroline Pleibel was absolute and unqualified; there was also offered the agreement with Fleming covering the sale of the Texas Avenue property, in which the testatrix alone joined; the subsequent deed from the testatrix to Fleming; the mortgage given by Fleming to the testatrix; an assignment of the mortgage as collateral by the testatrix to the appointee of Kensington Security Bank & Trust Company, which now holds the mortgage as security for a loan; a lease between the testatrix and one Tonkin in reference to the Texas Avenue property; and an agreement of sale, never carried out, dated February 1917, to one Stevens. All these specified the decedent as the sole owner of the Texas Avenue property.

It is needless to say that all these had to be executed in the form in which they were delivered, because of the way in which the title to the property stood on the record.

The assignment of the mortgage as collateral security at the bank was made on May 17, 1928. The testatrix had made numerous statements, intending thereby to protect the claimant, and I can well conceive that in her own mind she saw no impropriety in pledging the mortgage for the sum borrowed, because her half thereof was much greater than the loan. Even after she had pledged the mortgage, she made statements to witnesses that one half of the mortgage was her brother's.

Beatty evidently was convinced that the pledge of the mortgage had no significance so far as Albert Pleibel's interest was concerned, because he prepared the tax returns in his own handwriitng, and the return for 1928 stated that the testatrix had only received $833.33, one half of the total amount paid on account of the principal of the mortgage.

A similar statement was made in 1929 when Beatty made a return as executor of the estate.

I will repeat that there should be coupled with this, and not overlooked, Beatty's writing on August 24, 1929, that one half of the mortgage on the Atlantic City property was the property of A. L. Pleibel.

And further, we should recall that on October 18, 1929, Beatty wrote to Albert F. Pleibel, son of the claimant, stating that he had written to Mr. Fuges to pre-

pare an assignment of one half of the mortgage and after it had been executed it was to be delivered to Albert L. Pleibel.

It is obvious that the pledge of the mortgage was not regarded as in any sense adverse to the claim of Albert Pleibel.

I am of opinion that the claimant has established a trust in his favor for an individual one-half interest in this mortgage, and will briefly give my reasons therefor.

The will gives the background for the trust which has been established. Therein testatrix said:

"I do hereby declare that one half of my two-thirds interest in a certain lot of ground at Atlantic City, devised to me by my aunt, Caroline Schill, is the sole and undivided property of my brother, A. L. Pleibel."

This will is dated March 4, 1925, and about 3 months later she sold the property and took back a mortgage covering the two-thirds interest. She then declared orally and in writing that the claimant was the owner of a one-half undivided interest therein. She gave the claimant one half of her share of the purchase money and one half of the interest and payments on account of principal practically till her death.

It is impossible to read the testimony without coming to the conclusion that the decedent, in her inartistic fashion, was endeavoring to and did fulfill her obligation to her brother. She is not resisting this claim. The resistance comes entirely from volunteers and strangers to her blood.

It should, furthermore, be observed that in resisting this claim the accountant puts the decedent in the position of making a fraudulent income tax return, and Beatty, her attorney, in conspiring with her to that end. Then we have Beatty, as her executor, making a false return for her estate. By finding the existence of the trust, we discover the reasonable and proper explanation of these income tax returns.

I have endeavored to state the facts of this case very fully, and such a statement leads to the conviction that this testatrix had impressed a trust upon an undivided one-half interest in the Atlantic City mortgage in favor of the claimant, and an award will be so made.

The law of this case may be rested upon Smith's Estate, 144 Pa. 428, where the facts were closely analogous to the instant case.

Therein it appeared that Thomas Smith Kelly, a nephew of the decedent Thomas Smith, claimed $13,000 in coupon bonds of a certain company and the interest thereon which had been included in the account. Testator at the time of his death in 1883 had this nephew living with him as a member of his family, and at that time he was a minor. It appears that in 1882 the testator purchased the bonds in question and told the father of the minor that he had "laid by or appropriated" some bonds for the boy. After his death, an envelope was found in his safe deposit box endorsed: "13 bonds, $1,000 each, held for Tom Smith Kelly. [signed] T. S. Pensacola & Atlantic Railroad mortgage bonds."

The bonds in question were in the envelope. The decedent had entered in his own handwriting in his account book the following memoranda: "Account Thomas Smith Kelly", with a description of the bonds, the amount paid for them and then stated: "$13,000 of these bonds I bought for, and are the property of, my nephew and godson, Thomas Smith Kelly, and belong to him. Thomas Smith."

The account also showed interest on these bonds under an entry, "August 10, 1882, Thomas Smith Kelly, interest collected for him, $390." The decedent also kept a pocket memorandum book in which he jotted down his financial trans-

actions and each January made a summary of his investments. In the last statement made before his death, the $13,500 Pensacola and Atlantic bonds were included and opposite their entry was the word "Tom" in the handwriting of the testator.

The court held that the minor could recover the bonds from the estate with interest, that a trust had been impressed upon them by the testator in favor of the minor by virtue of the facts above set forth.

The Supreme Court, speaking through Mr. Justice Clark, said (page 435):

"If a trust is intended, it will be equally effectual whether the donor transfer the title to the trustee, or declare that he himself holds the property for the purposes of the trust. 'It is well settled that the owner of personal property may impress upon it a valid present trust, either by a declaration that he holds the property in trust, or by a transfer of the legal title to a third party upon certain specified trusts. In other words, he may constitute either himself or another person trustee. If he makes himself trustee, no transfer of the subject-matter of the trust is necessary; but if he selects a third party, the subject of the trust must be transferred to him in such mode as will be effectual to pass the legal title:' Bispham's Eq. 78; Perry on Trusts, §§ 96-98; Hill on Trustees, 117 et seq.; Dickerson's App., 115 Pa. [198] 210. . . .

". . . In Helfenstein's Est., 77 Pa. 328, Mr. Justice SHARSWOOD says: 'There is no prescribed form for the declaration of a trust. Whatever evinces the intention of the party that the property, of which he is the legal owner, shall beneficially be another's, is sufficient.' . . .

". . . It may also be conceded that if, under such circumstances, he were to have written his purpose formally upon paper, and added his signature and seal, he might the next moment have destroyed it. The trust, in such case, would take effect whenever it appeared that the instrument was executed as the deliberate expression of his purpose, and this may be shown by his acts or declarations respecting it, or by circumstances tending to establish the fact. . . .

". . . He did not revoke it; he put it away with the bonds themselves, and carefully preserved it. He collected the interest semi-annually, and, in recognition of the existing trust, placed the several amounts to the credit of the donee. It is not essential to the validity of a trust of personal property that it should be irrevocable; indeed, a right of revocation may be expressly reserved: Dickerson's App., 115 Pa. 198; Lines v. Lines, 142 Pa. 149." See also Washington's Estate, 220 Pa. 204.

I shall regard the testimony relating to the Schill devise and the clause as it exists in the instant will merely as creating a moral obligation by this testatrix, a moral obligation which she recognized in behalf of her brother, the claimant Albert L. Pleibel.

The property was sold shortly after the making of the instant will, and thereafter we find the testatrix making several written statements whereby she has declared that an undivided one-half interest in this mortgage belongs to her brother; then when the property was sold we find that she retained only one half of the net proceeds and upon that basis directed the accountant who was preparing her income tax return to include only one half of the net proceeds, and she directed him to make out a return for the claimant Albert L. Pleibel for the other one half; furthermore, we have her year after year including in her income tax return only one half of the principal and one half of the interest, the other one half being returned by the claimant. And it should be recalled that most of the testatrix's income tax returns were made out in the handwriting of Beatty, who also made out the return after her death on the same basis for himself as her executor.

The claimant also demands payments of one half of the interest and principal on the mortgage which were paid during the lifetime of testatrix and unaccounted for to the claimant.

These payments are covered by the testimony of William H. Carroll in interrogatories, and are as follows:

| | |
|---|---|
| July 19, 1928 | $1,766.67 |
| December 28, 1928 | 2,000.00 |
| January 23, 1929 | 2,325.00 |
| July 10, 1929 | 7,400.00 |

All these payments unaccounted for, shown in the testimony as above, together with interest, will be surcharged against John Eckstein Beatty, one of the accountants, and the surviving accountant is directed to set them forth in detail in the schedule of distribution herein ordered, which shall be approved by the claimant or his counsel.

Albert Pleibel objected to an item of the account: "December 31, 1930, J. B. Beatty, payment of note of decedent $7,463.50."

A note was produced in substantiation of this claim dated December 31, 1927, and also a check dated June 30, 1929, drawn to Beatty's order by Caroline Pleibel in the sum of $6,894.25.

As hereinbefore recited, various sums were paid to Beatty on account of the principal and interest due upon the Atlantic City mortgage. No accounting to the estate was ever made for this money, and until Beatty's estate renders an accounting to the estate of the decedent for these and other payments received by him this item will be suspended.

Furthermore, it should be pointed out that $47,800 was borrowed by Beatty on notes made to his order by Caroline Pleibel, endorsed by him, and discounted by him at Security Bank and Trust Company, and the funds so drawn out were deposited in Beatty's personal account at that bank.

Apparently there has been no accounting for these proceeds, and that will probably have to be made under an account filed in his estate. Any amounts which may be due him as creditor or legatee will be suspended until the accounting above referred to is cleared up.

Albert Pleibel further objects to the accountants' commissions, $5,404.47. Under the facts and circumstances of this estate, the commissions are reduced to 1½ percent, and are awarded to Mary H. S. Beatty, the surviving accountant. For the present, commissions are allowed only on the assets which have been converted into cash. Any further allowance will be determined when the other assets have been realized upon, as hereinafter directed.

Albert Pleibel also objected to the item in the supplemental account: "October 21, 1929, to December 16, 1931, payments made to Elverson Little of $20 per week during lifetime resettlement of claim of common-law marriage, 111 weeks $2,220."

As no evidence was offered to support this claim, this item will be stricken from the account and the accountant surcharged therewith, until it is determined if there is any net balance due the residuary legatees, and if so, it will be charged against such balance.

Albert Pleibel also claimed to have assigned to him $9,000 Electric and Peoples Trust Certificate 4s 1934, carried in the account at $4,320, and also various payments of interest thereon. The only evidence in support of this claim was that offered in the uncompleted will in the handwriting of the decedent, which was found on Beatty's desk after the death of the testatrix. This reads:

"Third. I hereby declare that one half of the mortgage I hold on the Atlantic City lot, Texas and Boardwalk, is the sole and undivided property of my brother. The $9,000 bond of E. & P. 4s registered in my name is the property of my brother also, and was loaned to me by him for the purpose of enabling me to issue money on loans."

There was no other testimony in support of this claim, Albert L. Pleibel's mouth being closed by the death of his sister. As there is no date to this writing, and no payments thereunder have been shown, and as the certificates in the account are dated 1899, I am of opinion that no award can be based on the meager record presented.

As hereinbefore recited, the mortgage secured upon property situated at Texas Avenue and the Boardwalk, Atlantic City, is pledged with Kensington Security Bank and Trust Company as security for a loan of $47,800 made to the decedent.

The mortgage being registered in the name of the decedent, and the bank having made the loan without notice of the interest of Albert Pleibel, the bank is entitled to payment in full out of the proceeds of the mortgage when realized upon. When the surplus proceeds are received by the estate, there will be a marshaling thereof between Albert Pleibel and the estate, and the one-half interest of the decedent will be charged with the full amount of the loan, and the other one half, or what remains if the decedent's one half is not sufficient to satisfy the bank's claim, will be awarded to Albert Pleibel.

As it does not appear that the estate is solvent, the award to Albert Pleibel will be subject to prorate with the other general creditors in the event of a deficiency of assets.

### Supplemental adjudication

Since the filing of my adjudication, exceptions have been filed by Albert L. Pleibel, and no. 8 thereof directs my attention to the fact that there was no express award to Albert L. Pleibel of one half of the interest and principal payments made on account of the mortgage secured on the property at Texas Avenue and the Boardwalk, Atlantic City, N. J., as set forth in the account. One half of these items, together with the surcharges made in my adjudication of other payments of either interest or principal on said mortgage, are now awarded to Albert L. Pleibel, saving, however, his right to take the same only in case this estate shall prove solvent: otherwise, he will only be entitled to a dividend on the same.

The accountant is directed to serve copies of this supplemental adjudication on counsel for the respective parties, who will have the right to except thereto within the time allowed by the rules of this court.

*John Whitaker Lord, Jr.*, and *Joseph R. Embery*, for Mary H. S. Beatty, exceptant.

*Chester N. Farr, Jr.*, for Albert L. Pleibel, exceptant.

VAN DUSEN, J., January 12, 1934.—Albert L. Pleibel, brother of the testatrix, claimed that he was the owner of one half of a mortgage for $168,333.33, secured upon a two-thirds interest in a property at Texas Avenue and Boardwalk, Atlantic City, which stood in the name of the decedent, Caroline L. Pleibel. She received this mortgage as part of the purchase money on the sale of the two-thirds interest in the real estate upon which it was secured. The auditing judge found for the claimant upon abundant evidence, and the residuary legatee has filed exceptions.

One group of exceptions relates to testimony of oral declarations made by Caroline Schill, who devised the property to Caroline Pleibel, and who was her aunt, that a two-thirds interest in this property (later appearing as one half of two thirds) was to belong to Albert Pleibel, and that Mrs. Schill had executed a paper to that effect; also oral declarations of Caroline Pleibel that she had given her aunt, at the time of the execution of the will, a writing agreeing to hold one half of the interest in the property, which was being devised to her, in trust for Albert Pleibel. It is quite true that Mrs. Schill would not be legally bound for lack of a writing, that the existence and loss of a writing was not properly shown, and that a claim against her was barred by the 5-years' statute of limitations, and other objections with the same mistaken thought in mind. But these matters were offered, not to bind Mrs. Schill or Caroline Pleibel, but to show the reason back of her acts and admissions, oral and written, or, as the auditing judge put it, to show the moral obligation which was the foundation of the trust, and for this purpose they were relevant.

Other exceptions relate to evidence of written declarations by the testatrix in three wills that Albert Pleibel was the owner of "one half of my two-thirds interest" in the ground devised by Caroline Schill. These wills are dated 1923 and 1925, and objection is made that they are dated more than 5 years after Caroline Pleibel acquired title in 1899. Here again are declarations as to Albert's interest in the real estate, which like those of Mrs. Schill, are intended to show motive and obligation, not to carry the title. The trust now claimed is not in the land, but in the mortgage.

Objection is also made that Albert is a volunteer, and that equity will not interfere to complete a gift. If there was a moral obligation, he was not a volunteer. This is not a gift, and no action of the court is necessary to complete the transaction; there is a declaration of trust which is complete without further legal action. See Smith's Estate, 144 Pa. 428, which is thoroughly discussed by the auditing judge. It is true that the declarations do not use the word "trustee", but they establish a relation which is a trust, and that is the same thing.

It is also objected that these declarations were not brought to the knowledge of Albert. He knew of the trust, and he may avail himself of all admissions thereof, though he did not know of them at the time.

The argument of the exceptant, Beatty, is disingenuous in spending its strength on matters which were by way of inducement only and ignoring the overwhelming testimony against him on the main question, which included his own deliberate and unequivocal written acts as agent of decedent and as executor and one of the residuary legatees under her will.

The adjudication surcharged Beatty as executor with four payments on account of this mortgage and interest thereon, made to him during the lifetime of the testatrix; and the supplemental adjudication as quoted below awarded to Albert one half of these sums. Earlier in the adjudication, there is a refusal to surcharge Beatty with these same items, and we are advised by the auditing judge that this duplication is an error. We think that the surcharge upon Beatty was correct, but not the award to Albert of one half of the surcharge.

The matter is complicated by the argument now made on behalf of Albert that he should have an award against Caroline's estate as general creditor for the amount of these items, on the ground that Beatty was the agent of Caroline, and that what he got she got. This claim, so far as appears from the adjudication, was not made at the audit, and the adjudication does not discuss the question whether Beatty was Caroline's agent only, or the agent of both Caroline and Albert.

We conclude from the whole testimony that Beatty was Caroline's agent only. If so, her estate is liable to Albert for one half of what Beatty got; but as Beatty was not Albert's agent, Albert is not entitled to any direct interest in the surcharge against Beatty. There should be an award to Albert L. Pleibel as a general creditor of Caroline of one half of $13,491.67, with interest on the items which make up this sum from the dates of payment to Beatty, as set forth in the adjudication; and the award in the supplemental adjudication of one half of the Beatty surcharges to Albert should be set aside.

The mortgage in question was assigned by the testatrix to Kensington Security Bank and Trust Company as security for a loan of $47,800. The present value of the mortgage is uncertain. As the bank loaned money to one who seemed to be the owner of the mortgage, its claim is not affected by the trust in favor of Albert, and must be paid in full out of the proceeds of the mortgage when realized. The auditing judge directed:

"When the surplus proceeds are received by the estate, there will be a marshaling thereof between Albert Pleibel and the estate, and the one-half interest of the decedent will be charged with the full amount of the loan, and the other one half, or what remains, if the decedent's one half is not sufficient to satisfy the bank's claim, will be awarded to Albert Pleibel.

As it does not appear that the estate is solvent, the award to Albert Pleibel will be subject to prorate with the other general creditors in the event of a deficiency of assets."

The account contained items of collection on account of this mortgage received by the executor since the death of the testatrix. Referring to these items and to the Beatty surcharges, the supplemental adjudication says:

"One half of these items, together with the surcharges made in my adjudication of other payments of either interest or principal on said mortgage, is now awarded to Albert L. Preibel, saving, however, his right to take the same only in case this estate shall prove solvent; otherwise, he will be entitled only to a dividend on the same."

These directions with regard to the marshaling of rights between Albert and the general creditors are made the subject of exceptions by Albert. The claim of the latter is that of an owner, and, so far as the property which he owned can be identified and has not been mingled with other funds of the testatrix, he is entitled to receive it free of the claims of general creditors. The conditions placed upon these awards should be modified so that Albert Pleibel would receive all the proceeds of the mortgage after the bank is satisfied, not exceeding one half of the gross proceeds, free of any claims of other creditors of the testatrix. Albert would also receive free of claims of general creditors one half of the collections made by the executor on account of principal and interest of the mortgage. These payments have been received by the executor as stakeholder for whom it may concern.

But Albert's claim herein allowed for one half of the sums received by the testatrix on account of the mortgage through her agent Beatty, and any claim which may arise for indemnity from the estate of Caroline so far as his half of the mortgage is taken to pay her debt, is a claim as general creditor, and it shares in the general assets with other creditors.

In a draft of a will in her own handwriting, testatrix declared. "The $9,000 bond of E. & P. 4s registered in my name is the property of my brother also." There were registered in her name nine $1,000 Electric & Peoples 4 percent stock trust certificates. It did not appear that formal title to these was ever in Albert. Granting that the declaration referred to these securities, there was no proof of ownership in Albert but this one bare admission, which was without

date—there was no corpus delicti, so to speak. This was not a gift or a declaration of trust. We think the auditing judge was right in rejecting Albert's claim for these securities.

All the exceptions of Mary H. S. Beatty and Mary H. S. Beatty, executrix of the will of John Eckstein Beatty, are dismissed. The exceptions of Albert L. Pleibel numbered 4, 5, 6, 7, and 8 to the adjudication of November 14th, and exceptions numbered 1 and 2 to the supplemental adjudication of November 22d are sustained so far as is consistent with this opinion, and his other exceptions are dismissed. As so modified, the account is confirmed absolutely.