## Reiff's Estate.

*Trusts and trustees—Right of revocation.*

A reserved right of revocation is not inconsistent with the creation of a valid trust.

A power of revocation which is not exercised stands as if it never existed.

*Railroad—Employees—Saving fund—Beneficiary—Revocation—Will.*

A railroad company established a savings fund for the benefit of its em-

ployees which was governed by a code of rules and regulations. One of the regulations provided that the money belonging to a depositor, should upon the death of the depositor, " be paid over only to the person designated in his application to receive the same," and " if the person so designated shall not be then living, said fund shall be paid either to the heirs or personal representatives of the deceased depositor as the board may determine." Another regulation provided as follows : " Depositors desiring to withdraw money must give ten days' notice to the superintendent of the fund, in the form of an order." One of the depositors designated his mother as beneficiary, and after her death he made a new designation of his wife as beneficiary. Subsequently the depositor made his will " superseding all previous instrument of prior date " by which he made certain bequests to his wife, children, brothers and sisters. In his will he provided that all his insurance policies in whosoever favor drawn were to be included in his general estate, but that his patents should be excluded. He continued to make deposits for nearly two years after the date of the will. *Held*, (1) that the paper designating the wife as a beneficiary taken in connection with the regulation of the savings fund was a revocable paper; (2) that the will did not revoke the appointment of his wife as beneficiary of the moneys in the saving fund; (3) that the wife was entitled to the money in the savings fund as against the estate of the depositor.

Argued Oct. 11, 1900.   Appeal, No. 22, Oct. T., 1900, by Savillion M. Reiff et al., from decree of O. C. Phila. Co., July T., 1898, No. 110, dismissing exceptions to adjudication in the estate of. Charles W. Reiff, deceased.   Before Rice, P. J., Beaver, Orlady, W. W. Porter and W. D. Porter, JJ.   Affirmed.

Exceptions to adjudication.

From the record it appeared that the decedent, Charles W. Reiff, in his lifetime was in the employ of the Pennsylvania Railroad Company, and desiring to become a depositor in the Employees' Saving Fund, made application therefor in the following form

December 30, 1887.

" I, Charles W. Reiff, of Philadelphia, County of Philadelphia, State of Pennsylvania, at present employed as traveling passenger agent of Passenger Department, Pennsylvania Railroad, hereby express my desire to avail myself of the Pennsylvania Railroad Employees' Saving Fund, upon the terms and conditions set forth in its regulations, as printed in the regular deposit book of the Fund.

" I agree that, in the event of my death, all deposits standing

to my credit in said Saving Fund, and all interest due thereon, shall be paid to Mrs. William K. Reiff, my mother, who resides at No. 2636 Brown street, Philadelphia, or, if not living, to my legal representatives.

CHARLES W. REIFF.

" Witness:
" D. C. WALSH."

This designation to pay to his mother was changed by a paper, of which the following is a copy:

" PHILADELPHIA, PA., March 8, 1894.
" MR. D. S. NEWHALL,
    " Supt. P. R. R. Employees' Saving Fund.
" Dear Sir: I hereby request and agree that, in the event of my death, all deposits standing to my credit in the Pennsylvania Railroad Employees' Saving Fund, and all interest due thereon, shall be paid to my wife, Sarah Welch Reiff, of Philadelphia, Pa., or, if not living, to my legal representatives, instead of to my mother, Mrs. William K. Reiff, the person named in my application, S. F., Form 1, dated December 30, 1887.

" CHAS. W. REIFF,
" Holder of Deposit Book No. 49.

" Witness:
" GEO. ASH, Agent."

By regulation No. 2, in said saving fund deposit book, it is provided:
" . . . . Employees desire to become depositors can obtain . . . . : form of application in which shall be set forth . . . . and the name and occupation of the person to whom, in the event of his death, his deposits . . . . shall be paid."

By regulation No. 11, depositors desiring to withdraw money must give ten days' notice to the superintendent of the fund.

By regulation No. 13, the agent will cash the order on the treasurer, or deliver it to the owner, who can obtain the money from any other agent, or from a bank in which the company's funds are deposited, on presentation of this book, indentifying himself and signing receipt on the order.

And by regulation No. 18, upon the presentation to the superintendent of the fund of satisfactory proof of the death of a

depositor, the money belonging to him shall be paid over only to the person designated in his application to receive same; or, if the person so designated shall not be then living, said funds shall be paid either to the heirs or personal representatives of the deceased depositor, as the board may determine.

Subsequently, on January 4, 1896, the said decedent, Charles W. Reiff, made and published his last will and testament, inter alia, as follows:

" PHILADELPHIA, January 4, 1896.

" I, Charles Wesley Reiff, being of sound mind and body, do make this, my last will and testament, superseding all previous instruments of prior date," etc.

And of said will appointed his wife, Sarah Welch Reiff, his brother, Emanuel K. Reiff, and his friend, William J. Burns, the executors.

The testator died November 9, 1897.

The testator's widow, Mrs. Sarah Welch Reiff (who is also one of the executors), after the death of testator collected from said saving fund the sum of $3,902.82, which sum the appellants sought to surcharge her with before the auditing judge.

The auditing judge refused to surcharge as requested, to which exceptions were filed and dismissed.

*Errors assigned* were in dismissing exceptions to adjudication.

*J. Henry Williams*, with him *Daniel M. Stewart*, for appellants.—An instrument in any form, whether a deed, poll or indenture, if the obvious purpose is not to take effect until after the death of the person making it, operates as a will: Harrison's Est., 196 Pa. 576; Frederick's App., 52 Pa. 338; Turner v. Scott, 51 Pa. 126; Armstrong's Est., 43 Legal Int. 238; Chestnut St. Nat. Bank v. Fidelity Ins., etc., Co., 186 Pa. 333.

Any testamentary disposition is revoked by another subsequent will or codicil duly executed and proved. And a subsequent will, without a revoking clause, as effectually repeals a prior will as with one: Rudy v. Ulrich, 69 Pa. 182.

The beneficiary named has no vested right of property, but simply an expectancy conditioned upon surviving the designator and conditioned that he makes no change in his designation:

Jones v. Northwestern Masonic Aid Association, 154 Pa. 99; Heasley v. Heasley, 191 Pa. 539.

*John G. Johnson*, with him *Isaac S. Sharp*, for appellee.— Reservation of a right to revoke, or of a present interest in the fund, amount to nothing where the transaction is between persons whose relations demand the application of principles different from those applicable in the case of strangers: Turner v. Scott, 51 Pa. 126; Chestnut St. Nat. Bank v. Fidelity Ins., etc., Co., 186 Pa. 333; Lines v. Lines, 142 Pa. 166; Dickerson's App., 115 Pa. 198; Wilson v. Anderson, 186 Pa. 531; Crawford's App., 61 Pa. 52.

The beneficiary took the deposit which she received from the Pennsylvania Railroad Company clothed with no trust in favor of the estate: Booth v. Oakland Bank of Savings, 54 Pac. Repr. 370.

OPINION BY ORLADY, J., January 22, 1901:

The Pennsylvania Railroad Company organized a project intended for the benefit of its employees, and formulated a code of rules and regulations providing for the membership, management of its affairs, and disposition of the funds realized from the deposits made by the members, and gave it the name of the Pennsylvania Railroad Employees' Saving Fund. Charles W. Reiff on December 30, 1887, signed an application to become a depositor in the saving fund in the following form: "I, Charles W. Reiff, at present employed as a traveling passenger agent of Passenger Department, Pennsylvania Railroad, hereby express my desire to avail myself of the Pennsylvania Railroad Employees' Saving Fund, upon the terms and conditions set out in its regulations, as printed in the regular deposit book of the fund. I agree that, in the event of my death all deposits standing to my credit in the said saving fund, and all interest due thereon, shall be paid to Mrs. William K. Reiff, my mother, who resides at No. 2636 Brown street, Philadelphia, or, if not living, to my legal representatives." On January 4, 1888, the applicant was formally admitted as a depositor in the fund. The mother of Reiff died, and on March 8, 1894, by a proper writing duly executed, he requested and agreed that in the event of his death, all deposits standing to his credit in the saving fund, and all interest due

thereon should be paid to his wife, Sarah Welch Reiff, or if not living, to his legal representatives. On January 4, 1896, Charles W. Reiff made his last will and testament—superseding all previous instruments—and died on November 9, 1897. By his will he made certain bequests to his wife, children and a sister, and certain contingent ones to his brothers and sister, and named his wife, a brother and one other as executors, etc. After the death of Reiff his widow elected to take against the will. She then collected from the saving fund the full amount of the balance standing to the credit of Charles W. Reiff, and receipted therefor as the beneficiary named on the books of the saving fund.

On the adjudication of the account the appellants, who are the brothers and sister of the decedent, contended that the saving fund's designation of Sarah Welch Reiff was of a testamentary character, and that it was revoked by the subsequent will of the testator, so that the amount realized from the saving fund should be a part of the general estate. But the orphans' court refused to surcharge her as executrix, with the amount she had personally received from this fund.

Rule 18 provided that "upon presentation to the superintendent of the fund of satisfactory proof of the death of a depositor, the money belonging to him shall be paid over only to the person designated in his application to receive same; or if the person so designated shall not be then living, said funds shall be paid either to the heirs or personal representatives of the deceased depositor, as the board may determine;" and Rule 11 is as follows: "Depositors desiring to withdraw money must give ten days' notice to the superintendent of the fund, in the form of an order," etc.

The project is independent of the various systems of insurance companies, beneficial associations, and savings societies.

Its manifest scope and purpose is, as suggested by appellants, "that the railroad company might aid and encourage its numerous employees in habits of economy and frugality by becoming a depositary for their savings, and paying them interest thereon, and at the same time, in a business where incapacity and death are liable to happen suddenly, be relieved from paying out the fund, by paying a person named in advance who has the authority to receive the same and give them an acquittance

therefor. " This surely furnishes a sufficient consideration for the contract, and the whole system would be destroyed if legal controversies were to arise over the distribution of the amount due at the death of the depositor. To avoid this confusion it was mutually agreed that " the money belonging to him " should be paid over only to the person designated in his application to receive the same and, " if the person so designated shall not be then living, said funds shall be paid either to the heirs or personal representatives of the deceased depositors, as the board may determine." By compliance with this regulation the saving fund and the beneficiary obviate the delay and expense incident to litigation, and the money goes promptly and without risk to the person named by the depositor. The writing is in a sense testamentary (Burst v. Weisenborn, 1 Pa. Superior Ct. 276), in that it is intended to take effect only in the event of the death of the depositor, and, under the decisions, it is by reason of that character a revocable writing. A reserved right of revocation is not inconsistent with the creation of a valid trust. In this case the depositor did not exercise his right to revoke the designation of his wife as beneficiary, and a power of revocation which is not exercised stands as if it never existed : Dickerson's Appeal, 115 Pa. 198; Lines v. Lines, 142 Pa. 167; Estate of Thomas Smith, 144 Pa. 428 ; Gaffney's Estate, 146 Pa. 49. The will of the decedent shows that he did not intend to divert this fund into his general estate. He provides that all his insurance policies in whosesoever favor drawn are to be included, and that the value of his United States patent rights and his income therefrom shall not be included in computing the value of his estate. It was not necessary to refer to the saving fund if the beneficiary was to remain as recorded, but it was highly important to refer directly and specifically to the designation and to annul it if that fund was intended to be made a part of his general estate. He made payments regularly into the fund in accordance with rules in his deposit book. He followed these rules in canceling the designation of his mother after her death and making the new designation of his wife as beneficiary. With the record so made by him, that is, with his wife named as his sole beneficiary, he continued to make payments into the fund for nearly two years after the date of his will. The fact that the wife receives more by this interpretation than the one

urged by the appellants is explained by, and in accord with, the declaration in the will, viz: "I wish to here record my life-long affection for my beloved wife Sarah Welch Reiff." The claim of a beneficiary in such a case is not based on a contract with the depositor, but upon the appointment made by the member or the direction given by him for the payment of the money: Niblack on Benefit Societies, sec. 229.

The use of testamentary words in such a paper does not conclusively show that it was not intended as a "designation." In other words, the paper might fall short of being a present and irrevocable assignment of the fund, and yet be a valid designation of the beneficiary if so intended. The question is, what was the intent of the member? Thomeuf v. Knights of Birmingham, 12 Pa. Superior Ct. 195; Hamilton v. Royal Arcanum, 189 Pa. 273. That it was the intention of the depositor to carry out the contract in the manner provided for in the rules can hardly be questioned; the only debatable question of the transaction being, whether or not the designation as made on the books of the fund was revoked by his will. The beneficiary did not have any vested interest in the contract or designation until the death of the depositor, at which time it became a valid trust, based on the unrevoked designation. This designation, under the rules of the fund, can be revoked only by a direct act, and the meaningless clause in this will—superseding all previous instruments—is not a sufficient retraction of the depositor's intention to change the beneficiary. The deposits were uncommon and exceptional, and regulated by accepted rules, which particularly provided that they were to be held for the separate purpose of repayment to the depositor on his order, or on satisfactory proof of his death, those standing to his credit were specifically set aside for and were to be paid to his wife (if living) as an individual and not in her capacity as executrix: Crawford's Appeal, 61 Pa. 52.

The adjudication of the orphans' court is affirmed.