## Klinger, Admr., v. Philadelphia Local Union No. 2, etc., et al.

*Jack Braslow*, for plaintiff.

*Edward B. Rosenberg*, for Philadelphia Local No. 2, defendant.

*Charles F. Nahill*, for Max Bittorf, defendant.

MILNER, J., January 21, 1947.—This matter comes before us on a bill in equity filed by plaintiff, Maxmillian J. Klinger, ancillary administrator of the estate of William Buck, deceased, for an injunction restraining defendant, Philadelphia Local No. 2 of the International Brotherhood of Bookbinders (hereinafter called the "union"), from paying a benefit in the sum of $500, payable upon the death of plaintiff's decedent, who was a member of the union in good standing at the time of his death, to defendant, Max Bittorf, who had been designated by decedent in his lifetime as the beneficiary of the benefit in the manner provided by the constitution and by-laws of the union. Plaintiff also requested that the court determine that Max Bittorf has no valid claim to the said benefit and that the union be directed to pay the benefit to plaintiff. Both defendants have filed answers to the bill in equity. In the answer filed by Max Bittorf he denies plaintiff's right to receive the benefit and asserts his right to the same as the designated beneficiary. The union in its answer states that inasmuch as it has two claimants

for the same fund it will hold the same subject to the order or decree of this court.

When the case came on for final hearing the parties agreed to a written stipulation of the facts which was filed. From the pleadings and the stipulation we make the following

### *Findings of fact*

1. Plaintiff's decedent, William Buck, was a member in good standing of the Philadelphia Local Union No. 2, International Brotherhood of Bookbinders, an unincorporated association founded in Philadelphia on May 5, 1892, and doing business in Philadelphia.

2. Said decedent during his lifetime designated Max Bittorf, one of the defendants herein, beneficiary of the benefits payable by defendant union.

3. A true and correct copy of decedent's designation of Max Bittorf as beneficiary as aforesaid which was duly delivered to the said union is as follows:

"MORTUARY BENEFIT RECORD OF THE PHILADELPHIA LOCAL UNION NO. 2, INTERNATIONAL BROTHERHOOD OF BOOKBINDERS

Philadelphia, September 29, 1942.

Name WILLIAM BUCK

PLEASE NOTE: In case of my death I hereby authorize the officials of the Philadelphia Local Union No. 2, I. B. of Bookbinders, of which I am a member, to deduct any and all delinquencies charged against my account from the mortuary benefits of the International Brotherhood of Bookbinders and of the Philadelphia Local Union No. 2, I. B. of Bookbinders if any (subject to laws of same) and that said benefits shall be paid to

Beneficiary    Max Bittorf    Relationship

Signed    William Buck

Witness    Nicholas Battista"

4. Said decedent died intestate in the State of New Jersey on November 11, 1945, not having been survived by a widow or children.

5. Charles B. Buck was appointed the domiciliary administrator of the estate of his deceased brother, the said William Buck, and in such capacity was compelled to pay out the sum of $238 to Etherington Funeral Home in payment on account of the funeral bill of decedent, which totaled $538.

6. The balance of the funeral bill in the sum of $300 was paid by one named Schuler out of the proceeds of an insurance policy paid for by decedent in which the said Schuler was named beneficiary, subject to an oral agreement with decedent that upon his death the proceeds thereof would be paid on account of the funeral expenses.

7. On August 1, 1946, Maximillian J. Klinger was appointed ancillary administrator of the estate of William Buck, deceased, by the Register of Wills in and for the County of Philadelphia.

8. In accordance with the provisions of article 5, sections 1-4 inclusive, of defendant union, subject to the provisions of article 9 of the international constitution, decedent having been a member thereof for more than 15 years prior to his death, was entitled to benefits in the sum of $500.

9. Article 5 of the local union's constitution, sections 1-4 inclusive, provides as follows:

"Benefits

"Section 1. Upon the death of a member who is in benefit standing and has been a continuous contributing member to the International Union for:

One year shall be paid .............. $100.00
Three years ........................ 200.00
Five Years ......................... 300.00
Ten years .......................... 400.00
Fifteen years ...................... 500.00

"The above benefits are subject to International Law and apply only to members who became classified before they reached the age of sixty-five.

## "Local Benefits

"Section 2. Only those who have been members at least one year and not owing more than four weeks dues shall be entitled to local sick benefits.

"Section 3. To receive local sick benefits a member shall notify the Local by mail, said notification to be accompanied by a doctor's certificate and shall have been absent from work due to sickness at least for one week. He shall receive one dollar for every working day he is absent from work during his illness, not exceeding five (5) days in any one week and not more than six (6) weeks in any one year. Said benefits shall begin on the first day he is absent from work due to said illness. He shall pay local dues while receiving benefits but shall be exempt from local dues and pay Per Capita Tax when benefits have ceased at the expiration of six (6) weeks.

"Section 4. Upon the death of a member who is not delinquent in the payment of his dues more than four weeks and has been a member for one year, if reinstated eighteen months, seventy-five dollars shall be paid by the Local to defray funeral expenses. The above benefits shall not apply to superannuated members nor to those who became members after having reached the age of fifty-five."

10. The above article is subject to the provisions of article 9, sections 1-4 inclusive, of the constitution of the International Brotherhood of Bookbinders as follows:

## "Funeral Benefits

"Section 1. Upon the death of a member who is in benefit standing and has been a continuous contributing member to the International Union for a period of

One year, shall be paid . . . . . . . . . . . . . . . . . $100
Three years, shall be paid . . . . . . . . . . . . . 200
Five years, shall be paid . . . . . . . . . . . . . . . 300
Ten years, shall be paid . . . . . . . . . . . . . . . 400
Fifteen years, shall be paid . . . . . . . . . . . . . 500

"Section 2. On the death of a member in good standing, the President and Secretary of the local union shall immediately notify the Secretary-Treasurer of the International Brotherhood of Bookbinders, on a form provided for that purpose, accompanying such notification with the due book of the deceased member, together with the medical certificate of death. The Secretary-Treasurer of the International Brotherhood of Bookbinders, as soon as practical after such notification, shall transmit the amount to the secretary of such local union, who shall, as soon as possible, forward to the International Secretary-Treasurer receipt as provided by the International Union signed by the Beneficiary receiving same.

"Section 3. No funeral benefit claim shall be allowed unless the deceased was possessed of a clear card showig dues and assessments paid to the International Union on or before the end of the month for which they are due.

"Section 4. It shall be illegal for a Local Union to withhold any surplus of mortuary benefits which might remain over and above actual burial expenses. Should any deceased member die without a beneficiary, the local Union of which the deceased was a member shall pay all necessary burial expenses. Should any moneys remain after this has been accomplished, such funds must be returned to the International Secretary-Treasurer to be replaced in the mortuary fund. It shall be absolutely illegal for any Local Union to withhold, use or divert such surplus funds to its treasury, and any Local Union official so doing shall be made to reimburse the fund in question as a condition of his membership;

provided that when the Local Union involved has advanced per capita tax or other moneys in behalf of the deceased member during his life, such moneys may be deducted.

"Local Union Secretaries shall keep a record of the beneficiary designated by each member to whom whatever benefits may be due shall be paid."

11. The Philadelphia Local Union No. 2, International Brotherhood of Bookbinders, is willing, ready and able to pay the said sum of $500 in accordance with the determination of the court as to the party equitably entitled thereto.

## Discussion

The question in this case is whether the benefit paid by the union on the death of its member, William Buck, is payable to his designated beneficiary or to decedent's estate. We are of the opinion that it is payable to his designated beneficiary.

Plaintiff contends that benefit is a "funeral benefit" and is "impressed with a trust *in the hands of the named beneficiary* of such funds for the payment of funeral expenses". (Italics supplied). Inasmuch as plaintiff in his bill asks that the court order payment of the benefit direct to the estate, we will assume that he means that the benefit is impressed with a trust for the payment of the funeral expenses and therefore decedent's designation of his beneficiary should be disregarded and the money should be paid to the estate.

As a matter of fact the funeral expenses in this case have been paid. The funeral bill amounted to $538 and the administrator appointed in New Jersey paid from the funds in the estate $238 and the balance of $300 was paid by a friend of decedent, one Schuler, whom he had made the beneficiary of the insurance policy upon his life and with whom he had an oral agreement that upon his death the proceeds thereof would be paid on account of the funeral expenses. This

would indicate that decedent did not contemplate or intend that his other friend, Max Bittorf, should use the union benefit for the purpose of paying his funeral expenses.

The determination of whether a benefit paid by a beneficial society or other voluntary association paying a benefit upon the death of a member is a funeral benefit, and is impressed with a trust for the payment of funeral expenses, or is a death or mortuary benefit payable to a named beneficiary without such a trust imposed upon it, does not necessarily depend upon the name that is applied to it in the laws of the society or organization, but upon an interpretation of the meaning and intent of the constitution and by-laws as a whole.

In Linaka v. Firemen's Pension Fund, 149 Pa. Superior Ct. 458, at page 462 the Superior Court held:

"As a general proposition the constitution and by-laws of a voluntary association constitute the compact which binds its members together and the law by which they are to be governed: Manning v. Klein et al., 1 Pa. Superior Ct., 210, 216."

In support of his contention plaintiff cites Freed's Estate, 1 D. & C. 308 (1921), in which the Orphans' Court of Philadelphia County held that whether a benefit paid to the widow of a deceased member of a fraternal beneficial society is a funeral benefit or a death benefit depends upon the constitution and by-laws of the society and that money paid as a funeral benefit is impressed with a trust for that purpose, and the estate of the deceased cannot be resorted to for payment of such expenses until the funeral benefits are exhausted. The constitution and by-laws of the fraternal beneficial organization in that case stated that the purpose of the organization was to "establish a sick and funeral fund" and that the local councils of the parent organization were to provide "a sufficient sum to give

the deceased brother decent burial". The benefit was payable only to the widow or nearest dependent relative. There was no provision giving a member the right to designate a beneficiary. In the case at bar he had such a right.

In In re Beidelman, 4 N. J. Misc. 549, 133 Atl. 873 (1926), Beidelman at the time of his death was a member of a fraternal organization under the laws of which there became payable at his death the sum of $1,000, which was termed by the constitution of the association "funeral benefits". Under the laws of the association the members had the right to name a beneficiary to receive the benefit and to change his beneficiary. If he did not designate a beneficiary to receive the fund, then the association was directed to pay the fund to his widow or nearest relatives if his widow did not survive him. He could also direct the association to apply the fund toward his burial expenses. After Beidelman's death the association gave a check in the sum of $1,000 to his widow. At the suggestion of her coexecutor she endorsed the check and caused it to be deposited in the bank account of the estate. When the executor's account came before the New Jersey orphans' court for audit, the accountant charged himself with this $1,000 as an asset of the estate and an exception was taken to such accounting on the ground that it was the property of the widow. The court sustained the exception. The court said (p. 550):

"The real issue raised is the construction of the term 'funeral benefits.' On behalf of accountant it is insisted that these words shall be construed to mean funeral expenses. In other words, that the fund in question was provided by the junior order for paying the funeral expenses of deceased. On the other hand, on the part of the exceptant, it is contended that the proper construction to be placed upon the term 'funeral benefits' is that it is thereby intended to designate

a beneficial return to the beneficiary, and that it is entirely distinctive from that of funeral expenses."

The court reasoned that the provision in the constitution of the association giving a member the right to name a beneficiary and change his beneficiary at will was "persuasive of an intent that the benefits due on the death of a deceased member may be paid to any certain designated beneficiary." Section 7 of the constitution provided that "a member wishing his council to see that he is properly buried may apply to the board of managers for a certificate directing the council to take charge of his remains and bury the same as per his instructions in said certificate and pay the balance to his beneficiary as named in section 4 of this chapter." If there are no such beneficiaries, it was provided that the balance will then revert to the council.

As to this section the court said (p. 552) :

"This would seem to negative the idea that the primary purpose underlying the payment of the fund in question was to provide a fund with which to pay the expenses of the funeral of the deceased, but it was rather the purpose of the council in adopting the constitution to provide a fund in the nature of insurance for the benefit of the person named as beneficiary either in the constitution itself or designated by the member under section 6 of that instrument."

The court held that the widow was entitled to the fund.

For all practical purposes the constitution and by-laws of the union in the case at bar are similar to those of the fraternal organization in the Beidelman case and the reasoning in that case applies here.

Plaintiff averred in his bill (paragraph 3) that decedent was "entitled to funeral benefit in the sum of $500." The union in its answer denied this averment as stated and averred that he "was entitled to mortuary or death benefits which are payable to a designated beneficiary". The right of a member to des-

ignate the beneficiary to receive the benefit payable upon his death is recognized by the constitution and by-laws of the union. The local union's constitution and article 5, section 1, is entitled "Benefits" and states that "upon the death of a member who is in benefit standing" for 15 years shall be paid $500 and provides: "The above benefits are subject to International Law. . . ." By international law is meant the constitution and by-laws of the parent international union with which the local is affiliated. In article 9 of the constitution of the international union the benefits payable upon the death of a member are referred to as "funeral benefits", but it will be noted that in section 4 of that article it is provided that:

"Local Union Secretaries shall keep a record of the beneficiary designated by such member to whom whatever benefits may be due shall be paid" and

"Should any deceased member die without a beneficiary, the Local Union of which the deceased was a member shall pay all necessary burial expenses."

It is quite clear that under the laws of the union it is *only* in the event that a member does not exercise his right to name a beneficiary of the benefit payable at his death that the benefit or a necessary portion of it is impressed with any trust to pay his burial expenses and the duty to so apply the fund is upon the union.

In Carpenter, Admr., v. Pennsylvania Railroad Employees Provident and Loan Assn. et al., 324 Pa. 540 (1937), John Daisley, decedent, an employe of the Pennsylvania Railroad Company, became a member of its Employees Provident and Loan Association. The purpose of the association was the encouragement of thrift among its members by systematic savings. The regulations of the association provided, inter alia, that a member had the right to designate a beneficiary to receive the accumulated savings credited to his account in the event of the member's death. The decedent designated his daughter, Marian Daisley, as his beneficiary.

At his death the sum to his credit was $19,904.96. The administrator of his estate filed a bill in equity in this court against the association and Marian Daisley, claiming the money. Preliminary objections to the bill were sustained by this court and an appeal taken. The Supreme Court in an opinion by Chief Justice Kephart sustained the judgment of this court, saying that the claim of the beneficiary was "in the nature of a contract for the benefit of a third party beneficiary . . ." and that the beneficiary was entitled to the fund. To the same effect see Reiff's Estate, 16 Pa. Superior Ct. 80 (1901) and Linaka v. Firemen's Pension Fund, supra.

We are therefore of the opinion that defendant, Max Bittorf, as the designated beneficiary of William Buck, deceased, is entitled to the benefit payable by defendant union upon the death of the said William Buck.

### Conclusions of law

1. Max Bittorf, the designated beneficiary of William Buck, deceased, is entitled to receive the benefit in the sum of $500 payable upon the death of said William Buck by reason of his membership in Philadelphia Local No. 2, International Brotherhood of Bookbinders.

2. Said benefit in the hands of the said Max Bittorf is not impressed with a trust to pay the funeral expenses of William Buck, deceased.

3. Plaintiff is not entitled to restrain the payment of said benefit by the said union to the said Max Bittorf.

4. Plaintiff is not entitled to receive payment of said benefit.

5. The costs in this case shall be paid as follows: One half by plaintiff and one half by defendant, Max Bittorf.

We accordingly enter the following

*Decree nisi*

And now, January 21, 1947, upon consideration of the foregoing case, it is ordered, adjudged and decreed that:

1. Defendant, Philadelphia Local Union No. 2, International Brotherhood of Bookbinders, forthwith pay to defendant, Max Bittorf, the sum of $500, being the benefit payable by said union upon the death of its member, William Buck, now deceased.

2. The costs shall be paid one half by plaintiff and one half by defendant, Max Bittorf.